*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0051p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____



IBRAHIM ALI KOUSSAN,

*Petitioner,*

*v.*

ERIC H. HOLDER, JR.,*

*Respondent.*

No. 07-4107

On Petition for Review from an
Order of the Board of Immigration Appeals.
No. A35 977 071.

Submitted:  October 30, 2008

Decided and Filed:  February 12, 2009

Before:  MARTIN, DAUGHTREY, and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Marisa C. Petrella, PETRELLA BROWN, Southfield, Michigan, for Petitioner.  Vanessa O. Lefort, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, Washington, D.C., for Respondent.

_____

## OPINION

_____

MARTHA CRAIG DAUGHTREY, Circuit Judge.  Petitioner Ibrahim Ali Koussan appeals from the denial of his request for a waiver of inadmissibility following the administrative determination that he should be removed to Lebanon, his native country.  Before this court, Koussan contends that the denial of the waiver under the now-repealed section 212(c) of the Immigration and Nationality Act (INA), 8 U.S.C.

_____

*Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Eric H. Holder, Jr. has been substituted for former Attorney General Michael B. Mukasey as the respondent in this case.

§ 1182(c) (1994), was an unconstitutional denial of equal protection and due process and, alternatively, was based upon the erroneous conclusion that applicable statutes did not contain a ground of exclusion that was comparable to the ground on which the petitioner's order of removal was based.[1]  Koussan further asserts that the Board of Immigration Appeals (BIA) erred by designating only a single member – rather than a three-member panel – to hear the administrative appeal.  For the reasons set out below, we find these issues to be without merit and, therefore, deny the petition for review.

### *FACTUAL AND PROCEDURAL BACKGROUND*

Koussan, a citizen of Lebanon, entered the United States as a lawful permanent resident in 1980 at the age of eight and has resided in this country continually since that time.  He was indicted in December 1992 on a charge that on August 17, 1992, he had "knowingly, intentionally and unlawfully distribute[d] a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance; to wit: approximately 56 grams of cocaine."  Koussan eventually pleaded guilty to the cocaine charge on August 17, 1993, exactly one year after the commission of the offense, and was sentenced to 15 months in prison by a judgment order dated November 18, 1993.

Two-and-one-half years later, in May 1996, an information was returned against Koussan alleging a violation of 18 U.S.C. § 1546(a) for making a false statement in a document required by immigration laws.  Specifically, that instrument charged that "[o]n or about November 11, 1992," Koussan falsely stated on an application for naturalization that he had never "been an illicit trafficker in narcotic drugs or marijuana" and that he had never "knowingly committed any crime for which [he] ha[d] not been arrested."  But, in fact, only three months before the November application, the petitioner had sold the cocaine that led to his 1993 conviction, and he had actually been arrested for that offense on September 8, 1992, a full two months before the making of the statements at

---

[1]In the Statement of the Issues in Koussan's appellate brief, the petitioner purports to seek review of his claim that he was denied procedural due process by the government's delay in issuing its order to show cause.  *See* Appellant's Br. at 2.  Despite the mention of the issue, however, Koussan does not argue that contention of error, which we thus deem waived.  *See, e.g.*, *Buziashvili v. Inman*, 106 F.3d 709, 719 (6th Cir. 1997) (argument considered waived when listed as an issue but no argument is made in the brief in support of the contention).

issue.  Eventually, Koussan entered a guilty plea to the false-statement charge and was sentenced by the district court to six months in prison for that offense.

On October 18, 1996, almost three full years after the petitioner was sentenced for the distribution of cocaine, the Immigration and Naturalization Service (INS) (now subsumed into the Department of Homeland Security) issued an order to show cause to Koussan, thereby initiating deportation proceedings based upon that 1993 conviction. In the order, the INS alleged that Koussan was removable from the United States both because the drug-trafficking conviction qualified as an aggravated felony pursuant to the provisions of 8 U.S.C. § 1101(a)(43)(B), *see* former § 241(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii), and because the conviction was for a controlled substance offense, *see* former § 241(a)(2)(B)(i) of the INA, 8 U.S.C. § 1227(a)(2)(B)(i).  Although Koussan conceded at a January 1997 hearing that he was convicted of the distribution charge, the INS still filed "additional charges of deportability" against Koussan on August 27, 1997, alleging that the petitioner was also removable from this country because he had previously been convicted "of a violation of . . . section 1546 of Title 18 (relating to fraud and misuse of visas, permits, and other admission documents)." *See* former § 241(a)(3)(B)(iii) of the INA, 8 U.S.C. § 1227(a)(3)(B)(iii).

At a hearing conducted on April 28, 1998, an immigration judge found that Koussan had been convicted previously of both distribution of cocaine and making a false statement on a document required for immigration purposes in violation of 18 U.S.C. § 1546.  The immigration judge thus concluded that the petitioner was "removable under 241(a)(2)(B)(i) as having been convicted of a crime relating to a controlled substance, that he's removable under 241(a)(2)[(A)](iii) as being convicted of an aggravated felony and, as well, he's removable under 241(a)(3)(B)(iii) as being convicted on a violation of Section 1546, Title 18."

Koussan appealed that determination to the BIA, which remanded the matter to the immigration judge for a determination of the petitioner's eligibility for a waiver of inadmissibility under § 212(c) of the INA, 8 U.S.C. § 1182(c), in light of the United States Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289 (2001).  Koussan

thereafter submitted an application for such a waiver on November 9, 2001. Finally, on December 23, 2005, the immigration judge denied the requested relief, holding that Board precedent, *Matter of Jimenez-Santillano*, 21 I&N Dec. 567 (BIA 1996), does not recognize the availability of section 212(c) relief for an alien removable under § 241(a)(3)(B)(iii) of the INA "because there is no corresponding ground of inadmissibility" should an applicant be seeking such relief upon returning to the United States from abroad. The BIA, through a single board member, dismissed Koussan's subsequent appeal, declining to revisit its prior decision in *Matter of Jimenez-Santillano*. The petitioner now seeks our review of that decision.

## *DISCUSSION*

### A. Standard of Review

When the BIA issues its own separate opinion after reviewing the decision of an immigration judge, we treat that BIA ruling as the final agency determination. *See Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007). We must review all legal determinations made in such a BIA ruling *de novo*, while granting substantial deference to the BIA's interpretation of the Immigration and Nationality Act and the INA's accompanying regulations. *See id.*

### B. Waiver of Inadmissibility Under Section 212(c) of the INA

In his appeal of the BIA decision in this matter, Koussan contends that the underlying framework supporting section 212(c) waiver determinations is unconstitutionally restrictive and that, in any event, the petitioner satisfied the existing requirements for a grant of such relief. The applicable provisions of the now-repealed section 212(c) of the INA, 8 U.S.C. § 1182(c) (1994), are relatively straightforward. Subsection (a) of section 212, as in effect prior to the repeal of subsection (c), listed numerous classes of individuals "who are ineligible to receive visas and who shall be excluded from *admission* into the United States." (Emphasis added.) Subsection (c), however, titled "Nonapplicability of subsection (a)," provided:

Aliens lawfully admitted for permanent resident [sic] who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than paragraphs (3) [denying admission to spies, terrorists, assassins, Communists, and Nazis, among others] and (9)(C) [denying admission to polygamists, child abductors, and guardians of excluded aliens]).  Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under . . . this title.  The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

8 U.S.C. § 1182(c) (1994).[2]  Thus, at least initially, certain aliens who had established a continuous domicile in the United States for at least seven years, and who had not been convicted of an aggravated felony punished by imprisonment of at least five years, were allowed to reenter the country after a voluntary departure despite the fact that those individuals had previously committed crimes that would have otherwise made them ineligible for readmission.

In 1956, the BIA issued a decision that sought to rectify an inequity that could arise in the readmission process solely by chance.  Because section 212(c) relief was available only to aliens detained while seeking *readmission* into the country, the very real possibility existed that a border official's unauthorized failure to deny reentry to an individual who should otherwise have been detained would exclude that individual from later discretionary relief.  In other words, if a person otherwise ineligible for readmission somehow was granted such readmission improperly, that person would have no protection during a subsequent *deportation* proceeding, while another individual who *was* properly detained upon reentry by immigration officials would be allowed to

---

[2] Pursuant to section 440(d) of the Antiterrorism and Effective Death Penalty Act (AEDPA), effective April 24, 1996, the final sentence of 8 U.S.C. § 1182(c) was amended to read:

This subsection shall not apply to an alien who is deportable by reason of having committed any [aggravated felony], [controlled substance offense], [firearm offense], or [miscellaneous crime involving espionage, sabotage, treason, etc.], or [two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct] for which both predicate offenses [were committed within five years after the date of admission and were punishable by a sentence of one year or longer].

petition to remain in the country.  In *Matter of G--A--*, 7 I&N Dec. 274 (BIA 1956), the Board remedied that problem by extending § 212(c) relief to "lawful permanent residents who commit an excludable offense in the United States, depart and return to the United States after commission of the offense, have not been put in exclusion proceedings upon return, but later end up in deportation proceedings."  *Blake v. Carbone*, 489 F.3d 88, 94 (2d Cir. 2007).

Despite the BIA's expansive reading of section 212(c) in *Matter of G--A--*, the Board refused in 1971 to extend the scope of the statute to a lawful permanent resident who *never* left the United States.  *See Matter of Arias-Uribe*, 13 I&N Dec. 696 (BIA 1971), *aff'd*, 466 F.2d 1198 (9th Cir. 1972).  Nevertheless, the Second Circuit arrived at a contrary conclusion in *Francis v. INS*, 532 F.2d 268 (2d Cir. 1976).  Faced with an equal protection challenge to the differing treatment of lawful permanent residents who departed and returned to the country and lawful permanent residents who remained within the national borders, the court found no rational justification for such a distinction in admissibility/removal consequences.  Recognizing that "an alien whose ties with this country are so strong that he has never departed after his initial entry should receive at least as much consideration as an individual who may leave and return from time to time," *id.* at 273, the Second Circuit concluded that section 212(c) relief should also "be available to deportable lawful permanent residents who differed from excludable lawful permanent residents only in terms of recent departure from the country."  *Id.*

The BIA followed the Second Circuit's lead and began to address section 212(c) requests from lawful permanent residents involved in deportation proceedings but "who were similarly situated to persons in exclusion proceedings."  *Blake*, 489 F.3d at 95 (citing *Matter of Silva*, 16 I&N Dec. 26, 30 (BIA 1976)).  As the court noted in *Blake*:

> With the equal protection problem identified, the difficult task became one of implementation.  How to decide whether a deportee was "similarly situated" to an excludee?  Answering the question proved most troublesome for the BIA, who ultimately settled upon the comparable grounds test – whether the "ground of deportation charged is also a ground of inadmissibility."  *Matter of Wadud*, 19 I&N Dec. 182, 184 (BIA 1984).

*Blake*, 489 F.3d at 95.

While the BIA, spurred on by the Second Circuit's *Francis* decision, attempted to develop a consistent framework for the constitutionally-mandated *expansion* of relief under existing immigration law, Congress was working at cross-purposes to *restrict* the availability of section 212(c) relief for deportees.  As again summarized by the Second Circuit in *Blake*:

> In 1990, Congress amended § 212(c) to remove the Attorney General's discretion to grant a waiver to aggravated felons who served more than five years in prison.  *See* Immigration Act of 1990 ("IMMACT"), Pub. L. No. 101-649, § 511(a), 104 Stat. 4978, 5052 (1990).  Six years later, Congress eliminated § 212(c) waivers altogether for lawful permanent residents convicted of an aggravated felony.  *See* Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, § 440(d), 110 Stat. 1214, 1227 (1996).  That same year Congress went even further, replacing § 212(c) with cancellation of removal, which explicitly denies the Attorney General discretion to cancel the removal of an aggravated felon.  *See* [Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, § 304(b), 110 Stat. 3009-598 (1996)] *codified at* 8 U.S.C. § 1229b(b)(1)(C).

*Id.* at 96.

Even in light of these statutory restrictions, however, federal courts, including the United States Supreme Court in *St. Cyr*, 533 U.S. 289, 326 (2001), held "that § 212(c) relief remains available for aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect."  Because Koussan entered his guilty plea to the 18 U.S.C. § 1546 false-statement-in-an-immigration-document charge in May 1996 – prior to the April 24,1997, cutoff-date provided in 8 C.F.R. § 1212.3(h)(2) – there is no dispute in this matter that the petitioner may seek a section 212(c) waiver even though that statutory provision has subsequently been repealed.

Although a lawful permanent resident in Koussan's position is *eligible* to seek section 212(c) relief, applicable regulations still provide that such relief must be denied

if, among other reasons, "[t]he alien is deportable under former section 241 of the Act or removable under section 237 of the Act on a ground which does not have a statutory counterpart in section 212 of the Act." 8 C.F.R. § 1212.3(f)(5). Because Koussan was indeed deportable under former section 241 of the Act,[3] it was incumbent upon the petitioner, in order to be entitled to a waiver of inadmissibility under applicable procedures, to identify "a statutory counterpart in section 212 of the Act" to the ground upon which the government sought to deport him.

## 1. Statutory Counterpart Requirement

Koussan first contends, however, that the regulatory provision requiring that grounds for deportation have a statutory counterpart in the readmission exclusion provisions of section 212(a) of the Act, 8 U.S.C. § 1182(a), need not be given effect by this court. In support of that proposition, the petitioner quotes the following portion of the Second Circuit's opinion in *Blake*:

> The BIA's emphasis on similar language is strange. Congress designed § 212(c) to waive grounds of exclusion, not deportation. It never contemplated that its grounds of deportation would have any connection with the grounds of exclusion. By now it should be clear that the history of § 212(c) relief for deportees began not with an expression of congressional intent but rather with *Francis*, 532 F.2d 268. Our holding in *Francis* was compelled by the Constitution. It was neither what Congress wrote nor what Congress "intended." Put simply, Congress did not employ similar terms when writing the grounds of exclusion and grounds of deportation because it had no need to, making it an exercise in futility to search for similar language to gauge whether equal protection is being afforded.

*Blake*, 489 F.3d at 102.

Unfortunately for Koussan, because prior reported decisions of the Sixth Circuit hold to the contrary, this court is not in a position to adopt such reasoning and conclude

---

[3]Section 241(a)(3)(B)(iii) of the Act, 8 U.S.C. § 1227(a)(3)(B)(iii), provides that an alien is deportable if he or she, at any time, "has been convicted of a violation of, or an attempt or a conspiracy to violate, section 1546 of Title 18 (relating to fraud and misuse of visas, permits, and other admission documents)."

that there need *not* be a comparable ground of exclusion and deportation.[4] In *Gjonaj v. INS*, 47 F.3d 824 (6th Cir. 1995), for example, we noted, "Numerous courts have held there must be a comparable ground of exclusion for an alien in deportation proceedings to be eligible for section 212(c) relief. We decline to change this well-established rule." *Id.* at 827 (footnote omitted). Likewise, in *Hamama v. INS*, 78 F.3d 233, 238 (6th Cir. 1996), we reiterated the holding that § 212(c) relief continues to be "available only if the grounds on which the alien is being deported have a counterpart in section 212(a)'s conditions for exclusion" and that amendments to the immigration statutes had not altered the law so as to "remove the 'exclusion counterpart' requirement." *Id.*

### a. Misrepresentation as Defined in 8 U.S.C. § 1182(a)(6)(C)(i)

Even though we are necessarily constrained by circuit precedent to hold that a petitioner seeking a waiver of inadmissibility must identify a ground of exclusion that is a counterpart or is comparable to the ground supporting deportation, we must still independently determine whether section 212(a) of the Act does, in fact, contain such a counterpart to 18 U.S.C. § 1546, the ground on which Koussan's deportation rests. At first blush, the ground for Koussan's deportation -- a conviction under 18 U.S.C. § 1546(a) for fraud and misuse of visas, permits, and other documents -- appears substantively identical to the ground for exclusion listed in section 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i) -- misrepresentation of a material fact in order to procure "a visa, other documentation, or entry into the United States or other benefit provided under" the applicable statutory chapter. Indeed, one portion of § 1546(a) seeks to punish anyone who "knowingly makes under oath, or . . . knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder." The making of such a knowingly false statement in an immigration document, *see* 18 U.S.C. § 1546(a), thus certainly seems comparable to a willful misrepresentation of a material fact in an effort to procure an immigration benefit, *see* 8 U.S.C. § 1182(a)(6)(C)(i).

---

[4]A panel of this court may not overrule the decision of another panel absent an inconsistent opinion from the United States Supreme Court or an *en banc* reversal of our earlier position. *See Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).

The Attorney General, however, relying upon the 1996 decision of the BIA in *Matter of Jimenez-Santillano*, contends that such a comparable statutory counterpart does not in fact exist for a section 1546 conviction. The BIA made clear in *Matter of Jimenez-Santillano* that it is not the specific *conduct* of a petitioner that must correlate to a ground of exclusion. Rather, "[t]he essential analysis is to determine whether the deportation *ground* under which the alien has been adjudged deportable has a statutory counterpart among the exclusion *grounds* waivable by section 212(c)." *Id.*, 21 I&N Dec. at 574 (emphasis added). *See also Thap v. Mukasey*, 544 F.3d 674, 678 (6th Cir. 2008).

In *Matter of Jimenez-Santillano*, the BIA concluded "that 18 U.S.C. § 1546(a) and the 'willful misrepresentation' ground of admissibility at section 212(a)(6)(C)(i) of the Act are neither 'comparable,' 'substantially identical,' nor 'equivalent,'" *id.* (citations omitted), in part because section 1546 "goes well beyond the type of fraud or misrepresentations before an immigration officer that might underlie an alien's excludability under section 212(a)(6)(C)(i)." *Id.* at 573. Although 18 U.S.C. § 1546(a) does prohibit some conduct constituting grounds for exclusion under section 212(a), as the BIA explained:

> 18 U.S.C. § 1546(a) also encompasses more serious document fraud and misuse offenses not contemplated by the "willful misrepresentation" language of section 212(a)(6)(C)(i), including the crime of selling visas, permits, and other immigration documents . . . .
>
> The acts falling within the reach of 18 U.S.C. § 1546(a) include forging, counterfeiting, and falsifying documents required for entry, as well as the unauthorized possession of equipment designed for the reproduction of such documents, regardless of whether the proscribed acts were performed for personal use to procure an immigration benefit or merely for personal gain, financial or otherwise. The coverage of the statute also extends to fraud or misuse of immigration documents in furtherance of marriage fraud schemes, and knowingly accepting, possessing, or using fraudulent immigration documents, regardless of whether their acceptance, possession, or use is to procure an immigration benefit. Furthermore, the language of section 212(a)(6)(C)(i) makes absolutely no mention of criminal convictions for document fraud or misuse.

*Id.* at 573-74 (citations omitted). Consequently, "[t]he vastly greater scope of 18 U.S.C. § 1546(a) is a significant factor in [the] determination that these provisions are not 'comparable' for section 212(c) waiver purposes." *Id.* at 573.

Such a conclusion makes intuitive sense, in light of the determination that it is not the petitioner's actual *activity* resulting in an order of deportation that must find a section 212(a) counterpart, but rather the broader *ground* for deportation that must prove to be comparable to a waiver provision. If a conviction pursuant to section 1546(a) is the applicable *ground* for deportation pursuant to the provisions of 8 U.S.C. § 1227(a)(3)(B)(iii), that *ground* cannot be comparable to the section 212(a)(6)(C)(i) waiver provision because numerous violations of 18 U.S.C. § 1546(a) obviously do not fall within the ambit of section 212(a)(6)(C)(i) of the Act. Because we grant "substantial deference" to BIA interpretations of the INA, *see Morgan v. Keisler*, 507 F.3d at 1057, we take our lead in this matter from the well-reasoned decision in *Matter of Jimenez-Santillano* and hold that Koussan was not entitled to a waiver of inadmissibility based upon his guilty plea to the charge of violating 18 U.S.C. § 1546(a).[5]

**b. Crimes Involving Moral Turpitude Under 8 U.S.C. § 1182(a)(2)(A)(i)(I)**

Again forced to concede that circuit precedent recognizes that a section 212(c) waiver is proper only when a lawful permanent resident is deportable on a ground that has a statutory counterpart in section 212(a), the petitioner alternatively submits that he is entitled to consideration for a waiver of inadmissibility because the ground alleged for his deportation – a violation of § 1546(a) -- is comparable to another ground for exclusion – commission of a crime involving moral turpitude. *See* § 212(a)(2)(A)(i)(I) of the Act, 8 U.S.C. § 1182(a)(2)(A)(i)(I). The Attorney General disagrees and relies upon BIA precedent for the proposition that the ground for deportation lodged against Koussan includes all provisions of 8 U.S.C. § 1227(a)(3), and that parts of that statutory

---

[5] As noted by the Attorney General in his appellate brief, "On review, Petitioner concedes that his cocaine conviction is not at issue for purposes of a 212(c) waiver. Pet. Br. at 23 n.13. The Board did not rely on that conviction in determining that Petitioner is not eligible for a 212(c) waiver," Appellee's Br. at 25 n.12, and any discussion of that conviction or its effect on a section 212(c) waiver analysis is beyond the scope of this appeal.

subsection have no counterpart within section 212(a)(2)(A)(i)(I)'s exclusion provisions for crimes involving moral turpitude.

In support of his position, the Attorney General cites, among other rulings, the BIA decision in *Matter of Wadud*, which does not identify a specific act that merits the sought-after deportation. Instead, the BIA decision states merely that Wadud was to be deported pursuant to section 241(a)(5) of the Act, the former version of 8 U.S.C. § 1227(a)(3). *See Matter of Wadud*, 19 I&N Dec. at 184 n.2. As such, the order of deportation encompassed numerous possible offenses ranging from the simple failure to inform the Attorney General of a change of address, *see* 8 U.S.C. § 1227(a)(3)(A), to the felony fraud proscribed by 18 U.S.C. § 1546, *see* 8 U.S.C. § 1227(a)(3)(B)(iii). In light of such generality, the BIA ruled that Wadud was not eligible for a waiver of inadmissibility because section 212(a) did not contain a ground of inadmissibility coextensive with the provisions of 8 U.S.C. § 1227(a)(3).

Wadud contended, however, that section 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), excludes from admission into the country aliens convicted of crimes involving moral turpitude, and that his fraudulent activities surely fell within that statutory ban. Nevertheless, the BIA declined "to expand the scope of section 212(c) relief in cases where the ground of deportability charged is not also a ground of inadmissibility." *Matter of Wadud*, 19 I&N Dec. at 185. In doing so, the Board concluded:

> Were we to hold otherwise, an anomolous [sic] situation would result in cases where deportability is charged under section 241(a)(5) of the Act since most of the offenses described in that section do not involve moral turpitude. To afford section 212(c) relief only to those aliens whose crime under section 241(a)(5) involved moral turpitude would be to reward those guilty of a more egregious offense for their greater culpability. We are unable to conclude that Congress intended such an inequitable consequence to ensue from the implementation of section 212(c).

*Id.*

Whereas the government sought generally to deport Wadud pursuant to section 241(a)(5) of the Act and thus did not differentiate among the numerous offenses encompassed by that single legislative provision, Koussan's August 1997 "Additional Charges of Deportability" specified that the petitioner was to answer claims that he violated *section 241(a)(3)(B)(iii)* of the Act and that he was "convicted on October 24, 1996, in the United States District Court for False Statement on Document Required by Immigration Laws for a violation of title 18, United States Code, Section 1546 relating to fraud and misuse of visas, permits and other entry documents." Consequently, Koussan argues that, unlike the situation in *Matter of Wadud*, the petitioner's immigration/deportation proceedings here afford a non-speculative opportunity to consider whether fraudulent statements made in an immigration document are substantially similar to crimes involving moral turpitude. *Matter of Wadud*, contends Koussan, is thus clearly distinguishable from the situation presented in this case and should not serve as a basis for denying further examination of the petitioner's claim for relief.

Nevertheless, we must accord substantial deference to the BIA's interpretation of the INA and its accompanying regulations. *See Morgan*, 507 F.3d at 1057. Doing so, we are constrained to agree with the Board's ruling in *Matter of Wadud* that section 212(a) of the Act does not contain a ground of inadmissibility – even the ground referring to crimes involving moral turpitude – that can be considered a statutory counterpart to 8 U.S.C. § 1227(a)(3). *See Thap*, 544 F.3d at 678 - 79.

**c.  Equal Protection Considerations**

Moreover, adoption of Koussan's argument in this regard would require us to side with the Second Circuit decision in *Blake* and align this court against every other circuit court that has addressed the issue in a published opinion. *See, e.g.*, *Gonzalez-Mesias v. Mukasey*, 529 F.3d 62 (1st Cir. 2008), *petition for cert. filed*, 77 U.S.L.W. 3296 U.S. Oct. 31, 2008) (No. 08-605); *Abebe v. Gonzales*, 493 F.3d 1092 (9th Cir. 2007); *Vo v. Gonzales*, 482 F.3d 363 (5th Cir. 2007); *Caroleo v. Gonzales*, 476 F.3d 158 (3d Cir. 2007); *Valere v. Gonzales*, 473 F.3d 757 (7th Cir. 2007). Doing so would also

necessarily constitute an implicit adoption of *Blake*'s conclusion that an equal protection analysis of such a claim inevitably leads to abandonment of the statutory counterpart requirement of 8 C.F.R. § 1212.3(f)(5) as interpreted by most courts.

In *Blake*, the Second Circuit determined that it need not "defer to the BIA's interpretation of the statutory counterpart rule." *Blake*, 489 F.3d at 100. Instead, the court "de-linked" the concepts presented by the section 212(a) grounds of exclusion and the statutory grounds for deportation and chose to "examine the circumstances of the deportable alien, rather than the language Congress used to classify his or her status." *Id.* at 104. Consequently, under the Second Circuit's equal protection mandates, if a petitioner's underlying offense could form the basis of a ground of exclusion if the petitioner were seeking readmission into the United States, that petitioner would be eligible for a section 212(c) waiver. *See id.* at 103-04. According to the Second Circuit, its precedent in *Francis* compels no less and requires that every deportee be treated exactly as if he or she were seeking readmission with an identical criminal history.

Koussan argues that this Second Circuit position involves a recognition that equal protection principles require a court to examine the situation of an individual seeking readmission into the United States and to treat a person in deportation proceedings in exactly the same manner. If, therefore, a lawful permanent resident previously convicted of a violation of 18 U.S.C. § 1546 were to leave the country and, upon his or her attempted return, be allowed to seek a waiver of inadmissibility because of the prior commission of what amounted to a crime involving moral turpitude, an individual in deportation proceedings should be allowed to take advantage of the same waiver provision of the immigration statutes.

In contrast, the equal protection position espoused by the BIA and by the majority of the courts of appeals disavows this Second Circuit argument "that equal protection requires that no distinction shall be made between permanent resident aliens who proceed abroad and nondeparting aliens who apply for the benefits of section 212(c) of the Act." *Valere*, 473 F.3d at 762 (internal quotation marks omitted). Rather, the countervailing argument contends:

> [T]he requirement of a comparable ground of exclusion in § 212(a) -- a "statutory counterpart" -- is what makes a removable, nondeparting alien similarly situated to an inadmissible alien in the first place. If the removable alien's crime of conviction is not substantially equivalent to a ground of inadmissibility under § 212(a), then the removable alien is not similarly situated for purposes of claiming an equal protection right to apply for § 212(c) relief.

*Id.*

According to this argument, "[b]ecause there is no statutory counterpart in § 212(a) for [Koussan's crime of violating the provisions of 18 U.S.C. § 1546, the petitioner] is not similarly situated to an inadmissible, returning alien who is eligible to apply for § 212(c) relief." *Id.* Consequently, Koussan's "treatment is not different from other aliens who face deportation for reasons that have no corresponding ground for inadmissibility under § 212(a)," and no equal protection problem arises in this situation.

In this appeal, we are called upon in the context of Koussan's equal protection claim to resolve the question of whether the crimes-involving-moral-turpitude ground of inadmissibility is a statutory counterpart to the deportation ground that is based upon the petitioner's prior conviction for violating 18 U.S.C. § 1546. By doing so, however, we would necessarily engage in two questionable actions. First, a decision to align this court with *Blake* would disregard Sixth Circuit precedent requiring that a *ground* for deportation have a statutory counterpart in the list of *grounds* for exclusion before a petitioner is eligible for section 212(c) relief. *See Thap*, 544 F.3d at 678; *Gjonaj*, 47 F.3d at 827. Clearly, the crime-involving-moral-turpitude ground for exclusion is not a statutory counterpart for a § 1546 immigration fraud basis for deportation. As noted by the Fifth Circuit in *Avilez-Granados v. Gonzales*, 481 F.3d 869, 872 (5th Cir. 2007), "it is not enough that a crime *could be* reclassified. There is no textual link between [the crime leading to initiation of deportation proceedings] and crimes involving moral turpitude to indicate that Congress had the same class of offenses in mind when it enacted the two provisions that must be compared." (Emphasis added.)

Second, adoption of the analysis in *Blake* would further expand § 212(c) beyond the plain meaning of that statutory provision's terms. The unambiguous language of

section 212(c) clearly applies only to exclusion/readmission proceedings. In *Francis*, however, the Second Circuit already "'stretched [§ 212(c)] beyond its language' in response to 'equal protection concerns.' Additional 'judicial redrafting would serve only to pull the statute further from its moorings in the legislative will.'" *Zamora-Mallari v. Mukasey*, 514 F.3d 679, 692 (7th Cir. 2008) (quoting *Campos v. INS*, 961 F.2d 309, 316 (1st Cir. 1992); *Farquharson v. United States Att'y Gen.*, 246 F.3d 1317, 1325 (11th Cir. 2001)).

As a result, we conclude that the majority view of this issue is more in line with the language from Sixth Circuit precedent and more defensible in light of the purpose and history of section 212(c). We hold, therefore, that 8 U.S.C. § 1182(a)(2)(A)(i)(I) is *not* sufficiently comparable to 8 U.S.C. § 1227(a)(3)(B)(iii) to be considered a statutory counterpart to that ground for deportation.

**2. Inconceivability of Statutory Counterpart**

As an alternative argument, Koussan asserts that he is entitled to section 212(c) relief because the grounds on which the government sought his removal could not possibly have had a counterpart ground for inadmissibility. To support this claim, the petitioner relies upon another Second Circuit decision, *Bedoya-Valencia v. INS*, 6 F.3d 891 (2d Cir. 1993). In *Bedoya-Valencia*, the court noted that the offense listed as the ground for Bedoya-Valencia's deportation, entry without inspection, could not possibly have a conceivable analogue in the exclusion setting because "an excludee, by definition, has not yet 'entered' the country, and hence, could not possibly have done so without inspection." *Cato v. INS*, 84 F.3d 597, 600 (2d Cir. 1996). As a result, the court concluded "that coherence and consistency are promoted by allowing the exercise of § 1182(c) discretion with respect to the deportation ground of entry without inspection" and that a "modest extension of the *Francis* rule" was thus justified under these limited circumstances. *Bedoya-Valencia*, 6 F.3d at 897.

In *Cato*, however, the Second Circuit emphasized the narrowness of the exception it had carved in *Bedoya-Valencia*. *Cato* involved a lawful permanent resident who was convicted of a firearm offense, which also had no statutory counterpart among

the grounds for exclusion contained in section 212(a) of the Act. Although Cato argued that the "inconceivability" basis for relief fashioned in *Bedoya-Valencia* should also be applied in his case, the court logically concluded:

> There is no question that Congress, had it so chosen, could have included weapons offenses as grounds of exclusion; but it has not. Because a weapons offense is not a ground of deportation that "could not conceivably" have an exclusion counterpart, *see Bedoya-Valencia*, 6 F.3d at 897, the *Bedoya-Valencia* reasoning does not apply. Thus, Cato is ineligible for § 212(c) relief.

*Cato*, 84 F.3d at 600.

Similarly, in this case, Congress could have chosen to include felony fraud in relation to the preparation of immigration documents as a specific ground of exclusion in section 212(a). For reasons known only to that legislative body, however, it chose not to do so. Koussan is thus foreclosed from seeking § 212(c) relief under the narrow exception created by *Bedoya-Valencia*.

## C.  Necessity of Three-Member BIA Review

Koussan also asserts that his administrative appeal of the denial of section 212(c) relief should have been heard by a three-member panel of the BIA, rather than by a single Board member. Through its rules, the Justice Department has, however, expressed its preference for dispositions by single Board members. In 8 C.F.R. § 1003.1(e), the department explains, "Unless a case meets the standards for assignment to a three-member panel under paragraph (e)(6) of this section, all cases *shall* be assigned to a single Board member for disposition." (Emphasis added.) Pursuant to subsection (e)(6) of the rule:

> Cases *may* only be assigned for review by a three-member panel if the case presents one of these circumstances:
>
> > (i) The need to settle inconsistencies among the rulings of different immigration judges;
> >
> > (ii) The need to establish a precedent construing the meaning of laws, regulations, or procedures;

     (iii) The need to review a decision by an immigration judge or the Service that is not in conformity with the law or with applicable precedents;

     (iv) The need to resolve a case or controversy of major national import;

     (v) The need to review a clearly erroneous factual determination by an immigration judge; or

     (vi) The need to reverse the decision of an immigration judge or the Service, other than a reversal under § 1003.1(e)(5).

8 C.F.R. §§ 1003.1(e)(6)(i)-(vi) (emphasis added). Consequently, under the plain language of the regulation, even if one of the six criteria for three-member panel review were presented in a particular case, the Board need not empanel a multi-member decision-making body but may do so in its discretion. *See Tapia-Martinez v. Gonzales*, 482 F.3d 417, 425 (6th Cir. 2007).

     Koussan argues for the exercise of that discretion in this matter "because the Immigration Judge's decision was no longer in conformity with the law" after the Second Circuit's ruling in *Blake*. Clearly, however, a Second Circuit opinion does not control a proceeding arising in the Sixth Circuit. We thus have no ground on which to hold that the Board abused its discretion in deciding how to constitute itself for review of the immigration judge's ruling in this case.

### *CONCLUSION*

     The law of the circuit requires us to hold that section 212(c) relief is available to Koussan only if he can establish grounds of inadmissibility that are comparable to the ground of removal/deportation filed against him. Because Koussan cannot do so, and because no constitutional infirmity or abuse of discretion is otherwise evident in this matter, we must DENY the petition for review.