NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0258n.06

Case Nos. 14-3380 & 15-3561

FILED
May 12, 2016
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

RANJIT SINGH,                                )
                                             )
        Petitioner,                          )
                                             )
                                             )     ON PETITION FOR REVIEW
v.                                           )     FROM THE UNITED STATES
                                             )     BOARD OF IMMIGRATION
LORETTA E. LYNCH, United States              )     APPEALS
Attorney General,                            )
                                             )     OPINION
        Respondent.                          )
                                             )

BEFORE: SUHRHEINRICH, McKEAGUE, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Ranjit Singh, a native and citizen of

India, seeks review of a final order of the Board of Immigration Appeals ("BIA"), denying his

request for a waiver pursuant to Section 216(c)(4) of the Immigration and Nationality Act,

8 U.S.C. § 1186a(c)(4)(B), which would allow him to stay in the country even though his

marriage to Diane Martin, an American citizen, ended in divorce. For the following reasons, we

**DENY** the petition for review.

I.

Singh entered the United States on February 8, 1998, with a non-immigrant B-1 business

visa, which authorized him to visit the country for about one month, until March 7, 1998. On

March 26, 1998, shortly after his visa expired, Singh married Diane Martin ("Martin"), a citizen

of the United States. Based on his marriage, on December 2, 1999, Singh's status was adjusted to conditional permanent resident, permitting him to stay in the country with a two-year green card, subject to certain conditions. To remove the conditions on Singh's status so that Singh could become a lawful permanent resident with a 10-year green card, Singh and Martin jointly filed a Form I-751 petition on September 17, 2001; however, Martin withdrew the petition on February 14, 2003. As a result, Singh's conditional-permanent resident status terminated.

On October 14, 2003, the Department of Homeland Security ("DHS") issued Singh a Notice to Appear, alleging that Singh was subject to removal. Singh appeared with counsel before an immigration judge ("IJ") in Detroit, Michigan on April 1, 2005. Based on his admissions, the IJ sustained the charge of removability. Singh then requested a waiver of the requirement that he and his spouse must jointly file the petition to remove the conditions on his status. DHS counsel moved to continue the removal proceedings to permit Singh to file his request. The IJ granted the continuance and scheduled a hearing for a later date. Subsequently, on July 18, 2005, Singh and Martin divorced.

About five months later, Singh married his current wife, Ginger Singh. Singh requested a continuance while he pursued a visa petition based on his marriage to Ginger. The IJ declined to continue proceedings for the new visa petition and scheduled a merits hearing on Singh's removal proceedings for January 27, 2011. In advance of that hearing, DHS submitted the record of the United States Citizenship and Immigration Services ("USCIS"). The record included a sworn statement by Singh's ex-wife, Martin, asserting that she was paid $10,000 to marry Singh and that she was also given jewelry worth $5,000 and an automobile. According to the statement, Martin and Singh did not live as man and wife and the person who introduced them told her that Singh "needed to get married to stay in the U.S." A.R. 585, 974–75. The

record also contained the notes of the USCIS officer who interviewed Singh. On July 23, 2009, the USCIS denied the request for a waiver of the joint filing requirements after concluding that Singh and Martin did not reside in a marital union. In its decision, the USCIS concluded that Singh failed to demonstrate that he entered into a good-faith marriage with Martin based on the timing of the marriage, a lack of cohabitation evidence, his failure to adequately rebut Martin's admission of fraud, and contradictions in his statements at his interview.

On June 15, 2011, the IJ conducted Singh's removal hearing. Singh's former counsel, George P. Mann, testified that he represented Singh in connection with filing the I-751 form and that he represented Martin in his divorce proceedings. Mann stated that even though he primarily practiced immigration law, he agreed to represent Martin in the divorce proceedings due to convenience, as there were no assets to be divided.

Singh also testified at the hearing. Although he stated that he met Martin four or five days after his arrival in the United States, he could not recall or consistently testify where and how they met or how many children Martin had. He also could not consistently recall the details of their separation. Contrary to Mann's testimony, Singh testified that he and Martin met with Mann for the sole purpose of seeking a divorce and not for assistance with the I-751 form. Further, Singh failed to present evidence of joint residence; commingled financial assets, accounts, leases, and/or contracts; witnesses to his life with Martin as a married couple; or other indices of a shared life together. Martin did not testify at the hearing.

Given the inconsistencies in his testimony, the IJ found that Singh was not a credible witness and that he failed to meet his burden of proving that he entered into his marriage with Martin in good faith. On January 9, 2012, Singh appealed the IJ's decision to the BIA. On April 2, 2014, the BIA adopted and affirmed the IJ's decision and dismissed Singh's appeal. Singh

next filed a motion to reconsider or reopen, which the BIA denied on May 19, 2015. This timely appeal followed.

## II.

When a petitioner obtains permanent-resident status in the United States based on a spousal relationship with a citizen, the status is issued on a conditional basis. 8 U.S.C. § 1186a(a)(1). To remove the conditional basis, the individual and spouse are required to file a joint petition within a prescribed period, attesting that the marriage is lawful, has not been annulled or terminated (other than through the death of a spouse), is not contracted for the purpose of procuring admission as an immigrant, and no fee or other consideration was given for the filing of the petition. 8 U.S.C. § 1186a(c)(1)(A), (d)(1). If the petitioner fails to meet any of these requirements—i.e. the marriage ended in divorce—the USCIS may still grant the requested relief and remove conditions on residence so long as the petitioner can demonstrate that the marriage was entered into in good faith. 8 U.S.C. § 1186a(b)(2). Where the marriage ends, the petitioner must file the petition with a request to waive the joint filing requirement. 8 U.S.C. § 1186a(c)(4).

## A.

When it comes to deciding whether a petitioner is eligible for a waiver, "[t]he determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Secretary of Homeland Security." 8 U.S.C. § 1186a(c)(4)(D). We are divested of jurisdiction to review a decision issued under the discretionary authority of the Secretary of Homeland Security. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). The jurisdiction-stripping provision of the immigration laws is "aimed at protecting the Executive's discretion from the

courts." *Johns v. Holder*, 678 F.3d 404, 405 (6th Cir. 2012) (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486 (1999)).

Thus, we have jurisdiction to review a BIA's order only to the extent a petitioner seeks review of issues of law or constitutional claims, and not discretionary decisions. *Id.* at 406. We lack jurisdiction to review, for example, arguments challenging the BIA's assessment of evidential weight and credibility, matters that the statute commits to the Attorney's "sole discretion," 8 U.S.C. § 1186a(c)(4). *See id.* at 407. At the same time, we retain the traditional authority to perform substantial-evidence review and constitutional analysis of questions of law. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). Nonetheless, we may indeed evaluate certain questions of law wrapped up in the eligibility determination—i.e., whether the BIA applied the correct legal test for a good-faith marriage, for example. *Johns*, 678 F.3d at 406.

When the BIA adopts and affirms an IJ's decision and provides additional analysis, as the BIA did in this case, we review both the IJ's decision and the BIA's additional reasoning. *See Haider v. Holder*, 595 F.3d 276, 281 (6th Cir. 2010).

We review legal issues *de novo*. *Ramaj v. Gonzales*, 466 F.3d 520, 527 (6th Cir. 2006). We review factual findings under the substantial evidence standard. *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004). Factual or administrative findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Lin v. Holder*, 565 F.3d 971, 978 (6th Cir. 2009) ("[R]e-weighing the evidence is not part of this Court's role under the substantial evidence standard."). The BIA's denial of the motion to reopen is reviewed deferentially, for abuse of discretion only. *Kucana v. Holder*, 558 U.S. 233, 243–44 (2010).

B.

Singh raises nine[1] grounds for appeal. None, however, compel us to set aside the BIA's order. We address each in turn.

*First*, Singh argues that the record does not support the BIA's assertion that the IJ employed the preponderance-of-evidence burden of proof in assessing the evidence because the IJ failed to specify the burden of proof. This claim is meritless. The BIA expressly found that Singh failed to demonstrate by a preponderance of evidence that he entered into his marriage with Martin in good faith. Regardless of whether the IJ expressly stated that the preponderance-of-evidence burden of proof applied, the BIA can make a finding that such a burden indeed applies and that the petitioner failed to meet that burden. *See* 8 C.F.R. § 1003.1(d)(3)(ii). The BIA has the authority to independently review *de novo* all questions of law, which includes whether a party met its burden of proof. *Id.*; *see also Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007). This means that even if the IJ applied the wrong standard, which we are not persuaded that it did, the BIA may make its own findings in affirming the IJ's determination. Therefore, Singh's argument is irrelevant, because it does not suggest that the BIA erred in applying the wrong burden of proof but only that the IJ did.

*Second*, Singh argues that the BIA erred in finding that the IJ properly considered the totality of the circumstances by relying on Martin's statement in the adverse credibility finding. Singh essentially challenges the BIA's assessment of weight and credibility, which, as we have already mentioned, we have no jurisdiction to review. *See Johns*, 678 F.3d at 406 (explaining that this Court does not have jurisdiction over arguments that allege that the BIA did not "fully consider certain pieces of evidence"). To the extent Singh contends that the BIA committed

---

[1] In his opening brief, Singh miscounts the number of claims of error he asserts. Instead of ten, which is what he lists in his table of contents, he briefs only nine.

legal error by misreading the IJ's decision and mischaracterizing the role Martin's sworn statement played in the decision-making process, we find no error.

*Third*, Singh claims that the IJ violated 8 C.F.R. § 1003.35(b)(6) by failing to request that the United States Attorney enforce the subpoena issued to compel Martin to testify. Singh, however, failed to exhaust his administrative remedies and raise this claim of error before the BIA. 8 U.S.C. § 1252(d)(1); *see also Csekinek v. INS*, 391 F.3d 819, 822 (6th Cir. 2004) ("Exhaustion of administrative remedies requires the petitioner to first argue the claim before the IJ or the BIA before an appeal on the issue may be taken."). Moreover, even accepting Singh's construction of the rule, the IJ's "duty" to request enforcement of the subpoena was never triggered, because Martin did not refuse to appear after having been properly "served." Rather, she failed to appear because she was not actually served. Attempts to serve her at several different addresses were unsuccessful and the subpoena was returned "unclaimed, unable to forward."

*Fourth*, Singh argues that the BIA prejudiced him by setting the briefing schedule before the IJ reviewed and approved the decision, in violation of its procedural rule requiring an IJ to review and finalize a decision within fourteen days of receiving a request from the BIA. 8 C.F.R. §§ 1003.3(c)(1), 1003.5(a). To prevail on this claim, Singh must show not only that the delay violated the BIA's rules, but he must also show that he was "prejudiced on the merits or deprived of substantial rights because of the BIA's procedural lapses." *See Johns*, 678 F.3d at 408. Singh claims that setting the briefing schedule violated his substantive rights because when the BIA established the briefing schedule, he had not yet retained his appeals attorney. Nor was the attorney present when the IJ issued the decision. Because his appeals attorney was not retained until after the IJ rendered its decision, Singh claims that he did not receive the print out

of the decision until after his brief was due. The BIA contends that Singh was not prejudiced because the decision was orally dictated and he was able to hear the decision.

The IJ's oral decision was announced on December 20, 2011. Singh was provided a printed copy of the transcript of the decision on February 23, 2012. The BIA established a briefing schedule, requiring Singh to file his appellate brief by March 15, 2012. Singh sought and was granted an extension of time, giving him until April 5, 2012. Singh, however, has not argued that he sought further extension and was refused.

Singh does not demonstrate a misunderstanding of the IJ's decision that would have changed the arguments he made before the BIA. Likewise, he has not cited any authority for the proposition that setting the briefing schedule before he had retained appellate counsel deprived him of his substantial rights. Therefore, Singh has not shown how this procedure was in error or how he was prejudiced.

*Fifth*, Singh argues that the BIA reviewed materials outside the record of appeal in denying Singh's motion to reopen proceedings—namely, that it relied on the denial of Singh's second wife's visa petition on his behalf. As Respondent argues, the BIA can hardly be deemed to have abused its discretion where "Singh faults the Board for discovering that the sole articulated basis for his motion no longer exists." Moreover, again, Singh cites no authority to suggest that any error deprived him of his substantial rights. Further, the limit placed on the BIA's fact-finding authority does not apply to the adjudication of a motion to reopen. *See* 8 U.S.C. § 1229a(c)(7)(B); 8 C.F.R.§ 1003.2(c)(1). Even so, the BIA is permitted to take "administrative notice of commonly known facts such as current events or the contents of official documents." 8 C.F.R. § 1003.1(d)(3)(iv).

*Sixth*, Singh argues that the BIA erred in denying his motion to reopen proceedings based on its finding that his request for the BIA to consider his second wife's response to the notice of intent was moot. This argument also fails. We review the BIA's denial of a motion to reopen or reconsider under the deferential abuse-of-discretion standard. *Kucana*, 558 U.S. at 243–44. This standard requires us to decide whether the denial of the motion to reopen departed from established policies or was based on an impermissible rationale. *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006).

The BIA did not abuse its discretion by discovering that the visa was denied and declaring the motion to reopen moot. *See Young Hee Kwak v. Holder*, 607 F.3d 1140, 1144–45 (6th Cir. 2010) (finding that no abuse of discretion occurred in denying continuance motion where USCIS adjudicated and denied the petition underlying the requested continuance). Singh bore the burden of demonstrating that reopening for further proceedings was warranted, but Singh made no alternative arguments in the event that his wife's visa would be denied. *See, e.g.*, *INS v. Doherty*, 502 U.S. 314, 323 (1992) (explaining that a movant's failure to establish a prima facie case for relief is reason enough not to reopen). Accordingly, the BIA did not abuse its discretion.

Singh's last three claims can be addressed together. Singh argues that the BIA erred in denying his request to refer his case to a three-member panel and for failing to explain its basis for denying that request. Singh further argues that by not referring his case to a three-member panel, his due process rights were violated because a single member panel is not allowed to reverse the IJ decision where there is a clearly erroneous balancing of discretionary factors. 8 C.F.R. § 1003.1 (e)(5).

Singh's arguments go largely to matters of discretionary authority, over which we lack jurisdiction. In 8 C.F.R. § 1003.1(e), the Justice Department explains, "Unless a case meets the standard for assignment to a three-member panel under paragraph (e)(6) of this section, all cases shall be assigned to a single Board member for disposition." Although Singh contends that a three-member panel was necessary to resolve a clearly erroneous factual determination made by the IJ, we have noted that even if one of the six factors of the regulation were presented, the BIA has discretion to elect not to empanel a multi-member decision-making body. *Koussan v. Holder*, 556 F.3d 403, 415 (6th Cir. 2009), *abrogated on other grounds by Judulang v. Holder*, 132 S. Ct. 476 (2011). In fact, our precedent makes clear that Fifth Amendment due process rights do not include a constitutional right to a three-member BIA panel. *Cf. Tapia-Martinez v. Gonzales*, 482 F.3d 417, 425 (6th Cir. 2007); *Ramaj*, 466 F.3d at 526 ("[T]he BIA's streamlining procedures do not themselves alone violate a [petitioner's] right to due process" (quoting *Denko v. INS*, 351 F.3d 717, 730 (6th Cir. 2003))). Accordingly, all of Singh's arguments fail.

### III.

Singh has also moved for this Court to hold the case in abeyance pending the district court's litigation on the I-130 form, which his second wife filed so that he could become a lawful permanent resident based on their relationship. However, the district court's decision on the I-130 form does not appear to bear on the issues raised in the instant petition. Based on the foregoing, we **DENY** both the petition for review and the motion to hold the case in abeyance.