*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0375p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

TREAP THAP,

　　　　　　　　　　　　*Petitioner,*

　　　*v.*

MICHAEL B. MUKASEY,

　　　　　　　　　　　　*Respondent.*

Nos. 07-3752/4168

>

On Petition for Review from a Decision
of the Board of Immigration Appeals.
No. A25 389 079.

Submitted:  July 30, 2008

Decided and Filed:  October 15, 2008

Before:  DAUGHTREY and GIBBONS, Circuit Judges; ZATKOFF, District Judge.[*]

---

## COUNSEL

**ON BRIEF:**  Donald L. Ungar, ATTORNEY AT LAW, San Francisco, California, for Petitioner.
Jesse Lloyd Busen, James A. Hunolt, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Respondent.

---

## OPINION

---

ZATKOFF, District Judge.  In 1996, following his conviction for robbery in the second
degree in California, proceedings to deport Treap Thap to Cambodia were instituted in California
but subsequently processed in Michigan when Thap moved there.  In 2005, the immigration judge
(IJ) determined that Thap was deportable.  The IJ, and subsequently the Board of Immigration
Appeals (BIA), rejected Thap's claims that: (1) because his status as a refugee had not been
terminated previously, he could not be deported ; (2) his robbery conviction did not subject him to
removal for an aggravated felony; and (3) his past persecution in Cambodia was sufficient to
withhold his removal.  The BIA also denied Thap's motion to reconsider the BIA's finding that his
robbery conviction was a crime of violence that precluded waiver of removal under  §212(c) of the
Immigration and Nationality Act (INA).  For the reasons set forth below, the Court affirms the
decisions of the BIA and the IJ to remove Thap.

---

[*]The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting
by designation.

**I.**

Thap was born in Cambodia in 1976. He and his family left Cambodia because of alleged persecution at the hands of the Khmer Rouge shortly after his birth. Thap then spent a period of time with his parents at a Thailand refugee camp before arriving in the United States in 1983. Thap was admitted to the United States as a refugee, but a year later his status was changed to that of lawful permanent resident. In 1996, Thap was convicted of robbery in the second degree, and the government commenced deportation proceedings against him. The government charged that Thap was removable because he had been convicted of an aggravated felony, and the IJ and the BIA concluded that Thap was removable on that basis. Thap now appeals to this Court, which has jurisdiction pursuant to INA §§ 242(a) and (b)(1)(2), which are codified at 8 U.S.C. §§ 1252(a) and (b)(2).

**II.**

Claims of due process violations and purely legal questions are reviewed *de novo*. *Mapouya v. Gonzales*, 487 F.3d 396, 405-06 (6th Cir. 2007) (citations omitted). The Court reviews the IJ's and the BIA's findings of fact under a deferential substantial evidence standard, such that their findings of fact "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B). A court may reverse a finding of fact only if "the evidence not only *supports* th[e] conclusion [urged by the petitioner], but *compels* it. ..." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) (emphasis in original); *Yu v. Ashcroft*, 364 F.3d 700, 702-03 (6th Cir. 2004).

**III.**

**A.      Thap's Residency Status**

Thap first argues that he retains the status of a refugee until he acquires the nationality of another country, and he relies on Article 1(C)(3) of the United Nations Convention Relating to the Status of Refugees, April 22, 1954, 19 U.S.T. 6259, 189 U.N.T.S. 150.[1] As this Court has held previously, this argument is without merit. *See Castellano-Chacon v. INS*, 341 F.3d 533, 544 (6th Cir. 2003) (citation omitted) (an alien cannot rely upon the Protocol Relating to the Status of Refugees (October 4, 1967, 19 U.S.T. 6223, T.I.A.S. No. 6577) to circumvent the INA because the Protocol is a non-self-executing treaty and therefore not judicially enforceable law). *See also Matter of Smriko*, 23 I & N Dec. 836 (BIA 2005).

Thap next argues that, as a refugee, he should be allowed to apply for re-adjustment of his status under INA § 209(a), accompanied by a waiver of inadmissibility under INA § 209(c), which is the same waiver available to a refugee when he initially applies for permanent resident status. Thap cites no authority for this proposition. Rather, he suggests that refugees in his situation should have a heightened level of protection against deportation because of their traumatic flight from persecution before arriving in the United States. The Court need not decide this issue for two reasons, each of which is discussed *infra*. First, Thap is not eligible for a waiver of admissibility under INA § 209(c) because he is removable due to his aggravated felony offense of robbery. Second, Thap has not documented that he endured a "traumatic flight" from persecution, or that he or his family were subject to any persecution before arriving in the United States.

---

[1]The United States is not a party to this Convention. Nevertheless, the United States acceded to the Protocol Relating to the Status of Refugees in 1968, which binds the United States to certain provisions of the Convention.

**B.      Robbery Conviction**

*1.      Crime of Violence*

Thap asserts that robbery is not a crime of violence under California law and, therefore, Thap is not subject to removal on that charge.  It should first be noted that Thap failed to raise this argument before the IJ or on appeal to the BIA.  Rather, Thap raised it for the first time in his motion to reconsider filed with the BIA.  Accordingly, it was not an abuse of discretion for the BIA to refuse to consider this issue in denying Thap's motion to reconsider. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("While we have never articulated precisely what constitutes raising an issue with the district court, we have found issues to be waived when they are raised for the first time in motions requesting reconsideration or in replies to responses.").

We also conclude that Thap's argument lacks merit.  California Penal Code § 211 provides:

Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, *accomplished by means of force or fear*.

(emphasis added).  A crime of violence for aggravated felony purposes under INA § 101(a)(43)(G) (referencing 18 U.S.C. § 16), is defined as:

(a)      an offense that has as an element the use, attempted use, or threatened *use of physical force* against the person or property of another, or

(b)      any other offense that is a felony and that, by its nature, involves a *substantial risk that physical force* against the person or property of another may be used in the course of committing the offense.

(emphasis added).  Thap asserts that the California Penal Code provision and the INA provision have a critical difference, *i.e.*, the INA provision requires that the crime involve "physical" force rather than just "force," as set forth in the California Penal Code.  Thap thus asserts that the INA requires force that is "violent in nature" and that is more than what is required for a robbery under California law (which may be committed in the absence of "violent" force or in the absence of actual force altogether when the mere threat of force induces fear in the victim).

We are not persuaded by Thap's argument.  It is uncontested that Thap was convicted of a felony offense.  More significantly, under California law, robbery is a crime which, categorically and by its very nature, involves the substantial risk that physical force may be used in committing the offense. *See United States v. Valladares*, 304 F.3d 1300, 1302-03 (8th Cir. 2002); *United States v. Gonzalez,* 429 F.3d 1252, 1254 (9th Cir. 2005); *United States v. McDougherty*, 920 F.3d 569, 573-74 (9th Cir. 1990).  As such, robbery under California law is a crime of violence for purposes of the INA, even though physical force is not an element of the crime. *Valladares*, 304 F.3d at 1303 ("When the prior offense was 'by its nature' a crime of violence, the district court is not required to consider whether the actual conduct involved the use, attempted use, or threatened use of physical force.").  Accordingly, Thap's robbery conviction constitutes a crime of violence that supports the IJ's and the BIA's finding that Thap is removable.

*2.      INA § 212(c) Relief*

8 U.S.C. § 1182(a) sets forth a long list of grounds that make an alien ineligible for admission, while 8 U.S.C. § 1182(c) specifically provides the United States Attorney General with discretion to allow an alien re-admission if the alien meets certain criteria.  Over the last 30 years, however, the BIA and the courts have extended § 212(c) relief to aliens seeking to avoid removal,

not simply those aliens seeking re-entry. *See Matter of Silva*, 16 I & N Dec. 26 (BIA 1976); *Francis v. INS*, 532 F.2d 268 (2d Cir. 1976).  Such relief extends only to aliens whose removability is based upon a ground for which a comparable ground of exclusion exists (*i.e.*, a statutory counterpart). *See* 8 C.F.R. §1212.3, which provides:

> (f) Limitations on discretion to grant an application under section 212(c) of the Act. An application for relief under former section 212(c) of the Act shall be denied if . . .
>
> > (5)  The alien is deportable under former section 241 of the Act or removable under section 237 of the Act on a ground which does not have statutory counterpart in section 212 of the Act.

Thap does not dispute that a crime of violence does not afford him a ground of exclusion under INA § 212(a)(2)(A).  Rather, Thap argues that robbery is not just a crime of violence but also constitutes a crime of moral turpitude, such that robbery would be a ground of exclusion under INA § 212(a)(2)(A).  Thap further argues that, because robbery could be considered a crime of moral turpitude, he should be eligible for relief under INA § 212(c), even if he is removable because robbery is a crime of violence.  This circuit has not addressed the issue, but the BIA and several other circuits have.

Only the Second Circuit has reached the conclusion advocated by Thap. *See Blake v. Carbone*, 489 F.3d 88, 102-03 (2d Cir. 2007)*; Francis v. INS*, 532 F.2d 268 (2d Cir. 1976).  Under the Second Circuit's analysis, an alien with an aggravated felony conviction "is eligible for a § 212(c) waiver if his or her *particular aggravated felony offense* could form the basis of exclusion under § 212(a) as a crime of moral turpitude." *Blake*, 489 F.3d at 104 (emphasis added).  The Second Circuit has concluded that the key in these cases is whether the particular offense "would trigger" § 212(c) if the alien were returning from a temporary trip abroad:

> If the offense that renders a lawful permanent resident deportable would render a similarly situated lawful permanent resident excludable, the deportable lawful permanent resident is eligible for a waiver of deportation.

*Blake*, 489 F.3d at 103.  Advocating this approach, Thap argues that because robbery could form the basis for his exclusion under § 212(a), he is eligible for discretionary relief under § 212(c).

The Second Circuit's approach has been rejected by the BIA and five other Circuits.  The BIA concluded that an aggravated felony "crime of violence" ground for removal under INA § 237 is not "substantially equivalent" to INA § 212(a)'s "crime involving moral turpitude" ground for exclusion such that the two can be considered statutory counterparts. *Matter of Brieva*, 23 I & N Dec. 766, 773 (BIA 2005).  The *Brieva* decision was relied upon by the BIA and IJ in this case.

The First, Third, Fifth, Eighth and Ninth Circuits have rejected Thap's suggested approach and the Second Circuit's conclusion by looking to the *statutory ground for removal*.  Under this approach, only if the *statutory ground* had a substantially identical counterpart in § 212(a) would the § 212(c) waiver apply.  In *Kim v. Gonzales*, the First Circuit held:

> In all events, we conclude that it would not matter even if [the alien's] actions in this instance could be considered a crime of moral turpitude *as well as* an aggravated felony and crime of violence.  As we read section 212(c), what the Attorney General had authority to waive, under certain conditions and before section 212(c)'s repeal, were particular *grounds* of exclusion; . . .
>
> But, as we have noted, there is no waiver authority for one who is excluded as an 'aggravated felon' or one who commits a 'crime of violence' (these not being

grounds of exclusion). So it is beside the point that a different ground of deportation (*e.g.*, the "crimes of moral turpitude" ground) might have been waived *if* it also had been invoked against him. If someone was found deportable on two different grounds, waiver of one would hardly avoid the other - for which waiver had not or could not be invoked.

468 F.3d 58, 62 (1st Cir. 2006) (emphasis in original). *See also Caroleo v. Gonzales*, 476 F.3d 158, 168 (3d Cir. 2007) (denying alien's request for § 212(c) relief because an aggravated felony "crime of violence" has no statutory counterpart in a crime involving moral turpitude and stating, "It is therefore irrelevant that [the alien's] conviction for attempted murder could have subjected him to removal as an alien convicted of a crime of moral turpitude under INA § 237(a)(2)(A)(i)"); *Vo v. Gonzales*, 482 F.3d 363, 371-72 (5th Cir. 2007); *Vue v. Gonzales*, 496 F.3d 858, 861-63 (8th Cir. 2007) ("That [the alien's] aggravated felony was also a C[rime] I[nvolving] M[oral] T[urpitude] is irrelevant"); *Komarenko v. INS*, 35 F.3d 432, 435 (9th Cir. 1994) (declining to follow a "factual approach" in determining whether an alien qualifies for a INA § 212(c) waiver). Further, as noted earlier, 8 C.F.R. §1212.3(f)(5) provides that an alien is ineligible for an INA § 212(c) waiver if he or she is "removable" on a ground that does not have a statutory counterpart in section 212 of the Act.

The majority view is that "'aggravated felony' and 'crime of violence,' although statutory grounds for deportation under specified conditions, were *not* themselves statutory grounds for exclusion; therefore the exclusion statute does not provide authority for waivers corresponding to those grounds." *Kim*, 468 F.3d. at 62 (emphasis in original). Under the majority approach, therefore, it is irrelevant that Thap's robbery offense might be considered a crime involving moral turpitude. Instead, Thap would be removable based on his robbery conviction (a crime of violence), which crime does not have a statutory counterpart in § 212(a). Therefore, under the majority approach, Thap is not eligible for relief under § 212(c).

This court concludes that the reasoning of the BIA and the First, Third, Fifth, Eighth and Ninth Circuits is correct, as best explained by the *Caroleo* court, 476 F.3d at 165 (citation omitted):

> [I]t is the statutory ground for removal that must have a "substantially identical" counterpart in the statutory grounds for exclusion in order to qualify for section 212(c); the factual basis of the underlying criminal activity is irrelevant.

Further, as expressed by the *Komarenko* court, 35 F.3d at 435 (internal citations omitted), the approach advocated by Thap and adopted by the Second Circuit would require the Court to expand its function beyond its permitted judicial powers:

> Such judicial legislating would vastly overstep our "limited scope of judicial inquiry into immigration legislation . . . and would interfere with the broad enforcement powers Congress has delegated to the Attorney General."[2]

Thap next maintains that the BIA's conclusion in *Matter of Brieva*, and decisions of the IJ and the BIA in this case, constitute a violation of his equal protection rights. Thap argues that permanent residents may be excluded from entering the U.S. if they are inadmissible on grounds

---

[2]Thap also argues that neither the IJ nor the BIA decided whether the same result was mandated as to Thap's conviction of a theft offense. Because we find that the crime of violence ground for Thap's removal has no statutory counterpart in INA § 212(a), thus rendering him ineligible for relief under § 212(c), we do not reach the question whether the second ground upon which the government seeks to remove Thap (the theft offense) has a statutory counterpart in INA § 212(a). For the same reason, the IJ and the BIA did not err in failing to decide whether Thap's conviction of a theft offense would have resulted in a different conclusion.

specified in § 212(a), but that § 212(c) allows immigration officials the discretion to re-admit such persons if they first left the country. Therefore, Thap believes that his equal protection rights have been violated because he, as someone who did not leave the country, has fewer "rights" than someone with the same criminal history as Thap, who left the country and was seeking re-entry into the United States.[3]

The Third and Fifth Circuits have rejected equal protection arguments such as the one asserted by Thap. *See Caroleo, supra; Vo, supra.* We are persuaded that the reasoning set forth in those cases is correct. Specifically, we rely on the following language in *Vo*:

> Vo argues that barring § 212(c) relief to aliens in his position violates equal protection . . . because he would be eligible to apply for a waiver of his aggravated felony if he were to leave the country and seek readmission.

> This court rejected a similar argument in *Requena-Rodriguez v. Pasquarell*, 190 F.3d 299, 308-09 (5th Cir. 1999). Even if deportable and excludable aliens can be considered similarly situated, there is a rational basis for distinguishing between the two. *See Rodriguez*, 9 F.3d at 414 ("Congress is not required to treat all aliens alike; it is only required to give a facially legitimate and bona fide reason for treating them differently.") Here, the different limits on § 212(c) relief act as a "carrot" to induce voluntary departure: "Congress's more lenient treatment of excludable as distinct from deportable aliens ... creates an incentive for deportable aliens to leave the country-which is after all the goal of deportation-without their having to be ordered to leave at the government's expense." *Requena-Rodriguez*, 190 F.3d at 309 (quoting *LaGuerre v. Reno*, 164 F.3d 1035, 1041 (7th Cir. 1998).

> Additionally, in the immigration context, there is a particular need for courts to defer to congressional choices. *See Requena-Rodriguez*, 190 F.3d at 309. Here, Congress chose to make certain excludable aliens eligible for discretionary relief under § 212(c), and the expansion of that provision, required by *Francis* and *Silva*, has only been extended to those for whom the ground of deportability has a comparable ground for inadmissibility. Vo does not fall into this limited category for whom courts have required an expansion of § 212(c), and there is therefore no equal protection violation.

*Vo*, 482 F.3d at 371-72 (citations omitted). Likewise, as discussed above, Thap does not fall into the limited category for whom courts have required an expansion of § 212(c). Therefore, this court finds that there is no equal protection violation in this case.

## C.    INA § 243(b)(3)(A); 8 U.S.C. § 1231(b)(3)(A)

Pursuant to INA § 243(b)(3)(A) and 8 U.S.C. § 1231(b)(3)(A), an immigrant is not to be deported to a country where his life or freedom would be threatened because of his race, religion, nationality, membership in a particular social group or political opinion. Persecution is "a threat to the life or freedom of, or the infliction of suffering or harm upon, those who differ in a way regarded as offensive." *Matter of Acosta*, 19 I&N Dec. 211, 222-23 (BIA 1985). "An applicant must

---

[3]The IJ and BIA also concluded that Thap was ineligible for a § 212(c) waiver because he pled guilty between April 24, 1996 and April 1, 1997, a time during which § 212(c) relief was not available for those convicted of an aggravated felony. *See* Anti-Terrorism and Effective Death Penalty Act of 1996, Section 440(d) ("AEDPA") (effective April 24, 1996, § 212(c) relief was not available for those convicted of an aggravated felony); Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Section 304(b) (repealing § 212(c) as of April 1, 1997); 8 C.F.R. § 1212.3(h)(2) (bars a § 212(c)waiver to those who pled to an aggravated felony between those dates). For the reasons set forth above, we need not consider this issue.

therefore actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an objective situation under which his fear can be deemed reasonable." *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998) (citations omitted). More specifically, we have held that persecution consists of "more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Id.* at 390. *See also Castellano-Chacon*, 341 F.3d at 550; *accord Singh v. INS*, 134 F.3d 962, 967 (9th Cir. 1998) (holding that an alien "'must show that [he] is at particular risk-that [his] predicament is appreciably different from the dangers faced by [his] fellow citizens" (citation omitted)).

Ordinarily, to qualify for withholding of removal, an alien must show a "clear probability" of persecution in the proposed country of removal. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 430-31 (1987); *Mikhailevitch*, 146 F.3d at 391. The alien can meet his burden by showing either: (1) past persecution on account of a protected ground, in which case there is a rebuttable presumption that the alien's life or freedom would be threatened if he returned to his native country; or (2) a future threat to his life or freedom on account of a protected ground. 8 C.F.R. § 208.16(b)(1) and (2); *Almuhtaseb v. Gonzalez*, 453 F.3d 743, 750 (6th Cir. 2006). If an alien can establish that he or she was the victim of persecution before coming to the United States, the burden of proof shifts to the government to prove that such a "fundamental change in circumstances" has taken place in the country of removal such that the alien's life or freedom is no longer in danger. 8 C.F.R. § 208.16(b)(1)(A).

The IJ and the BIA concluded that Thap failed to establish past persecution. The record reflects that Thap did not testify as to any recollection of life in Cambodia, nor did he present any evidence about the events that led his family to leave Cambodia. Thap presented several reasons why his parents *could* have fled from Cambodia. Most significantly, Thap suggested the general threat of genocide at the hands of the Khmer Rouge in the killing fields of Cambodia constituted evidence that he and his family needed to escape Cambodia because they feared possible future persecution. The conditions under the Khmer Rouge certainly reflected poor human rights conditions in Cambodia at the time Thap and his family left the country, but evidence of human right conditions generally is not sufficient to establish persecution. *See, e.g., Allabani v. Gonzales*, 402 F.3d 668, 673-75 (6th Cir. 2005); *Daneshavar v. Ashcroft*, 355 F.3d 615, 624-25 (6th Cir. 2004); *Maryam v. Gonzales*, 421 F.3d 60, 63 (1st Cir. 2005).

Moreover, Thap fails to identify how his (or anyone in his family's) race, religion, nationality, membership in a particular social group or political opinion resulted in persecution at the hands of the Khmer Rouge, nor does he identify any threats or actions against Thap or his parents which forced them to leave Cambodia. As numerous courts have recognized, past persecution at the hands of the Khmer Rouge requires more than vague claims of persecution or actions by the Khmer Rouge that were not motivated by any of the grounds identified above. *See Em v. Ashcroft*, 2004 WL 2580901 (9th Cir. Nov. 15, 2004); *Seng v. Ashcroft*, 2004 WL 1663261 (9th Cir. July 12, 2004). In this case, Thap has not presented any evidence of why he and his family would have been subject to the threat of genocide at the hands of the Khmer Rouge. Moreover, Thap does not even allege that he or any member of his family suffered persecution while in Cambodia. *Cf. Ouda v. INS*, 324 F.3d 445, 454 (6th Cir. 2003). Such evidence is critical, and without it, the court cannot find that "any reasonable adjudicator would be compelled to conclude" that the IJ and the BIA ruled erroneously. *See* INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B); 8 U.S.C. § 1101(a)(42)(A).

As Thap has not established that there was any past persecution, there is no presumption that he would be subject to persecution upon returning to Cambodia such that the burden of rebutting that presumption would shift to the government. Therefore, the court finds that Thap cannot establish

a clear probability of persecution in Cambodia on the basis of any past persecution to which Thap or his family were subject.

We next examine whether Thap can prove that there is a future threat of persecution based on a protected ground should he return to Cambodia. *Almuhtaseb*, 453 F.3d at 750 (citations omitted); *Knezevic v. Ashcroft*, 367 F.3d 1206, 1214 (9th Cir. 2004) (holding that a well-founded fear requires petitioner to show more than a generalized or random possibility of persecution); 8 C.F.R. § 1208.16(b). Again, Thap has not met that burden. In other cases, aliens have acknowledged that the Khmer Rouge is no longer a threat. *See, e.g., Seng, supra.* Further, there is no evidence that persons returning to Cambodia have been subject to persecution (as defined in this Circuit), and Cambodia has placed no restrictions on returnees. *See 2003 State Department Report on Human Rights Practices in Cambodia.* Although there is evidence that some returnees were detained for several weeks and forced to pay bribes, it is also uncontested that the Cambodian government subsequently respected their rights. *Id.* Further, no evidence has been presented that the detainees were abused. *Id.* In such situations, courts have not found persecution. *See, e.g., Almuhtaseb, supra; Mikhailevitch, supra; Ngure v. Ashcroft*, 367 F.3d 975, 990 (8th Cir. 2004) (no persecution where the alien was detained three times and sustained physical abuse which did not require medical attention); *Al-Saher v. INS*, 268 F.3d 1143, 1146 (9th Cir. 2001) (a six-day detention absent abuse did not rise to the level of persecution). Finally, Thap has presented no evidence that anything in his history or his family's history, such as alignment with a political party, would subject him to persecution upon his return to Cambodia.

For the reasons set forth above, we conclude that the evidence in this case does not compel the conclusion that it is "more likely than not" that Thap would be detained, let alone tortured, upon removal to Cambodia. Therefore, for the reasons set forth above, we **AFFIRM** the determinations of the IJ and the BIA.