NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0681n.06

No. 08-3307

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Oct 09, 2009**

LEONARD GREEN, Clerk

SALIF DIALLO,                                )
                                             )
        Petitioner,                          )
                                             )    ON PETITION FOR REVIEW OF AN
v.                                           )    ORDER OF THE BOARD OF
                                             )    IMMIGRATION APPEALS
ERIC J. HOLDER, JR., Attorney General,       )
                                             )
        Respondent.                          )

Before: MARTIN, ROGERS, and COOK, Circuit Judges.

COOK, Circuit Judge. Salif Diallo, a citizen of Mauritania, petitions for review of the Board of Immigration Appeals ("BIA")'s order denying his applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We dismiss in part for lack of jurisdiction and deny the remainder of the petition on the merits.

**I. Background**

Petitioner, a native Mauritanian of Fulani ethnicity, claims he entered the United States in December 2003 with a false Senegalese passport bearing his photograph. In March 2004, he filed an affirmative application for asylum, withholding of removal, and CAT protection, asserting that he fears persecution on the basis of race at the hands of the White Moor regime governing Mauritania. Diallo claims that in 1989, when he was eight years old, White Moor soldiers physically

attacked his family at their home in Mauritania and forced them to cross a nearby river into Senegal. Once in Senegal, Diallo spent a number of years at a refugee camp where both he and his father acquired refugee cards. In 1996, he moved to Dakar where he worked for seven years before obtaining a plane ticket and passport from his employer to enter the United States.

The Immigration Judge ("IJ") denied Diallo's asylum application, finding that he neglected to timely file it, and, in the alternative, that the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(b)(2)(A)(vi), precludes him from claiming asylum because he was firmly resettled in Senegal. The IJ also denied Diallo's application for asylum and withholding of removal on the merits, finding that Diallo did not suffer past persecution and failed to show either a well-founded fear of future persecution or a clear probability of future persecution or torture. The IJ's order designated Senegal or Mauritania for Diallo's removal. The BIA affirmed and petitioner now appeals.

## II. Analysis

### A. Asylum

This Court lacks jurisdiction to review the denial of Diallo's asylum application. An alien seeking asylum must show by clear and convincing evidence that he filed his application within one year of entering the United States. 8 U.S.C. § 1158(a)(2)(B). Applicants may avoid this requirement by "demonstrat[ing] to the satisfaction of the Attorney General . . . the existence of changed circumstances which materially affect the applicant's eligibility for asylum . . ." 8 U.S.C. §

1158(a)(2)(D). Although Diallo arguably asserts changed circumstances, § 1158 bars judicial review of BIA timeliness determinations generally, and the existence of changed circumstances specifically, where a petition fails to raise any related constitutional claims or questions of law. *El-Moussa v. Holder*, 569 F.3d 250, 254 (6th Cir. 2009); *Huang v. Mukasey*, 523 F.3d 640, 650–51 (6th Cir. 2008); 8 U.S.C. § 1158(a)(3). Because Diallo appeals only the BIA's factual findings, we lack jurisdiction to review his asylum claim, and consequently, we need not reach the issue of firm resettlement or the merits of his asylum claim.

**B. Withholding of Removal**

Although we lack jurisdiction to review Diallo's asylum application, we may review the BIA's denial of his withholding of removal claim. *See Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006). Where, as here, "the BIA adopts the IJ's reasoning, the court reviews the IJ's decision directly to determine whether the decision of the BIA should be upheld on appeal." *Gilaj v. Gonzales*, 408 F.3d 275, 282–83 (6th Cir. 2005) (citing *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003)).

Whether the petitioner requests withholding of removal under the INA or the CAT, we will reverse if we deem the IJ's decision manifestly contrary to law. 8 U.S.C. § 1252(b)(4)(C). We review the IJ's factual findings under a deferential substantial-evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude the contrary." *Thap v. Mukasey*, 544 F.3d 674, 676 (6th Cir. 2008) (quoting 8 U.S.C. § 1252(b)(4)(B)). Thus, to reverse

- 3 -

the BIA's determination, we must find that the evidence "not only supports a contrary conclusion, but indeed *compels* it . . ." *Yu v. Ashcroft*, 364 F.3d 700, 702–03 (6th Cir. 2004) (internal quotation marks and citation omitted).

In order to prevail on his petition for withholding of removal under the INA or the CAT, Diallo must show a "clear probability" that removal from this country would subject him to persecution or torture because of his race, religion, nationality, membership in a particular social group, or political opinion. *Kouljinski v. Keisler*, 505 F.3d 534, 544 (6th Cir. 2007). An alien can meet this standard by showing that he was persecuted in the past, which triggers a rebuttable presumption of future persecution or torture. 8 C.F.R. § 1208.16(b)(1); *Almuhtaseb*, 453 F.3d at 750. Or, in the absence of past persecution, an alien can succeed by showing it is more likely than not that he will suffer persecution or torture if removed. 8 C.F.R. § 1208.16(b)(2); *see Kouljinski*, 505 F.3d at 544–45.

The IJ determined that Diallo failed to demonstrate past persecution and, as a result, could not invoke the presumption of future persecution or torture. The evidence does not compel a contrary conclusion. Although the IJ found Diallo's testimony about his family's deportation from Mauritania by White Moor soldiers technically credible, he nonetheless found it unpersuasive and lacking corroboration. Diallo often testified in a nonresponsive manner, despite his own insistence that he understood the interpreter, and despite many requests from his attorney and the IJ that he listen carefully and answer only the question being asked. Although the law does not require an

applicant to present corroborating evidence, "where it is reasonable to expect corroborating evidence . . . [t]he absence of such corroborating evidence can lead to a finding that an applicant has failed to meet [his] burden of proof." *Dorosh v. Ashcroft*, 398 F.3d 379, 382–83 (6th Cir. 2004) (internal quotation marks and citation omitted). Diallo presented only a pair of Senegalese refugee cards and an irrelevant letter from his brother, none of which the IJ found meaningfully corroborative of Diallo's story of deportation. Absent other corroborating evidence, such as letters from his family substantiating relevant facts, the IJ acted within his discretion in concluding that Diallo failed to meet his burden of proof. Because of Diallo's unresponsive testimony and lack of corroborating evidence, the IJ's finding that Diallo was not persecuted in the past withstands our substantial-evidence review.

Thus, in order to prevail on his petition for withholding of removal, Diallo must establish a likelihood of persecution or torture upon his removal to Mauritania or Senegal. 8 C.F.R. § 1208.16(b)(2). Diallo alleges that he fears returning to Mauritania because the government in power remains hostile to the Fulani population, and because his parents and other Mauritanians warned him not to return. He also claims to fear returning to Senegal because Senegalese authorities stopped him on several occasions and threatened him with deportation, although Diallo concedes that the authorities never apprehended him or pursued the matter further.

The IJ acknowledged Mauritania's spotty human rights record, but found that Diallo failed to establish a likelihood of persecution or torture in either country. With respect to Mauritania, the

IJ noted substantial improvement in the country conditions since Diallo's departure in 1989, with the transition from a military to civilian authority, promised democratic elections in 2007, and return from Senegal of many Mauritanian refugees who have resumed agricultural activities. Diallo argues that these reports fail to consider the continuing political and racial tension, providing an article from a Mauritanian website about a *failed* coup attempt in June 2006. But Diallo fails to present any other documentary evidence more recent than 2002, and provides nothing to suggest that the Mauritanian government will likely persecute or torture any members of the Fulani population, let alone persecute or torture him. Although conditions in Mauritania have become less stable since the BIA affirmed the IJ's decision, we are limited to the administrative record. 8 U.S.C. §§ 1252(a)(1) & (b)(4)(A); *Lin v. Holder*, 565 F.3d 971, 978–79 (6th Cir. 2009). As to Senegal, the IJ credited the government's evidence that holders of refugee identity cards in Senegal, such as Diallo, enjoy all of the rights of Senegalese citizens, except the right to vote. Diallo offered no evidence to the contrary, but rather conceded that he lived in Senegal for fourteen years before coming to the United States, that he worked for seven of those years, and that all of his siblings currently live in the country's capital without legal impediment. In denying his application, the IJ appropriately found that these concessions undermined Diallo's claim of future persecution or torture in Senegal. The record does not compel a contrary conclusion as to removal to either country.

### III. Conclusion

For these reasons, we dismiss in part for lack of jurisdiction and deny the remainder of the

petition on the merits.