**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0742n.06

No. 09-3040

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Nov 18, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| DAOUDA TOURE, | ) | |
| | ) | ON PETITION FOR REVIEW |
| Petitioner, | ) | OF A DECISION FROM THE |
| | ) | BOARD OF IMMIGRATION |
| v. | ) | APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., Attorney General of the | ) | **O P I N I O N** |
| United States, | ) | |
| | ) | |
| Respondent. | ) | |

BEFORE:     **MERRITT, GIBBONS, and McKEAGUE**, Circuit Judges.


**McKeague, Circuit Judge.**  Daouda Toure petitions this court to review an order of the Board of Immigration Appeals ("BIA"), which dismissed his appeal of the immigration judge's ("IJ") decision denying his application for asylum, withholding of removal, and protection under the Convention Against Torture.  The IJ found that Toure, a native of the Ivory Coast and member of the Dioula tribe, lacked credibility and failed to establish past persecution or a well-founded fear of future persecution.  Because the IJ's decision is supported by substantial evidence, we **DENY** the petition.

**I.**

Before coming to the United States, Toure owned an art gallery in the West African nation of the Ivory Coast. Ethnic and political strife have long been recognized in that country, with documented executions, tortures, arbitrary detentions, and harassment at the hands of military and rebel forces. The 2006 Country Report from the U.S. State Department lists the government's human rights record as poor and notes that tension and political instability remain high. Toure claims that he was not directly involved in the country's political turmoil, though he was indirectly affiliated with members of a major opposition party. According to Toure, a leader of the opposition party helped him open his art gallery. This in turn meant that many of Toure's customers were members of the opposition political party.

In August 2003, Toure received a summons to appear before police as a result of his affiliation with the opposition party. Before the appearance date arrived, four military officers apprehended Toure at his gallery and took him, and other detainees, to a detention center. Toure was detained for three days and interrogated about his involvement with the opposition party. He claimed that he received daily beatings with a baton and was subject to inhumane living conditions during his imprisonment. Toure was released from prison on the fourth day, after his mother went to the detention center in search of him. As a result of the beatings, Toure claimed that he suffered bruising. He sought medical treatment at a clinic a few days after his release and was told that he would be okay. Toure then fled the Ivory Coast at the urging of his parents. He first traveled to

Ghana and then flew from Gambia to Baltimore, Maryland.[1]  He arrived in Baltimore in December

2003, without a valid visa or passport, and proceeded on to Columbus, Ohio.

After settling in Ohio, Toure filed a handwritten Application for Asylum and for Withholding

of Removal in January 2004.  In the application, he claimed fear of mistreatment and torture if he

returned to the Ivory Coast.  The application was subsequently referred to an IJ for adjudication of

removal proceedings.  At the removal proceeding, Toure testified regarding the 2003 detention.  To

support his claim for asylum, he presented his Ivorian birth certificate, his 2003 summons to appear

before police, a U.S. State Department Country Report on the Ivory Coast, and various agency and

news articles detailing the conditions in the Ivory Coast.  Additionally, Toure testified that in 2001

he was injured by military agents and subsequently hospitalized with head injuries because he was

in the vicinity of a student demonstration where military agents and demonstrators had clashed.

Toure provided a hospital discharge form to support this incident.

The IJ denied Toure's claim for asylum, withholding of removal, and protection under the

Convention Against Torture and ordered Toure removed to the Ivory Coast.  The IJ found that Toure

lacked credibility due to two inconsistencies.  First, the IJ found an inconsistency in whether Toure

signed a document stating that he had not been tortured as a condition of his release from the 2003

imprisonment.  Toure testified that he refused to sign the document, yet his Application for Asylum

stated that he "was forced to sign" the document.  Second, the IJ found that Toure lacked credibility

---

[1]Toure's brief claims that his family secured "proper documentation" for him to leave the Ivory Coast. However, Toure testified in the removal proceeding that he used an Ivorian passport, which did not contain his name or picture. He apparently used the fraudulent passport to go through customs at the Baltimore airport.

on his claim that he was beaten daily during the detention because Toure claimed the beatings caused non-severe bruising only. Additionally, Toure did not present any documentation to support his claimed visit to the medical clinic. The IJ further found that Toure did not meet his burden on the asylum claim because he failed to establish past persecution or a well-founded fear of future persecution. According to the IJ, the detention alone did not amount to past persecution, and Toure presented nothing additional to establish a well-founded fear of future persecution. Because Toure failed to meet his burden on the asylum claim, he also did not meet the higher burden on the withholding of removal or protection under the Convention Against Torture claims.

Toure appealed the decision to the BIA, which the BIA dismissed. The BIA noted the inconsistency in whether Toure signed the document and the general lack of credibility and documentary support. It granted deference to the IJ's findings and agreed that Toure's evidence was insufficient to support his claim. Toure petitions this court to reverse the decision. He claims error in the IJ's adverse credibility determination and in the IJ's determination that he failed to establish past persecution or a well-founded fear of future persecution.

## II.

### A.    Legal Standard and Standard of Review

An applicant for asylum bears the burden of establishing that he qualifies as a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42)(A). *Mapouya v. Gonzales*, 487 F.3d 396, 406 (6th Cir. 2007). This can be met through credible testimony by the applicant showing past persecution or a well-founded fear of future persecution. *Id.* The relevant inquiry begins with a credibility

determination by the IJ and is followed by a determination on whether the applicant meets the persecution requirement. *Id.* at 411.

This court reviews the IJ's factual findings and credibility determination under the substantial evidence standard. *El-Moussa v. Holder*, 569 F.3d 250, 255 (6th Cir. 2009); *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009). Legal conclusions are reviewed *de novo*. *Zhao*, 569 F.3d at 246. Under the substantial evidence standard, the administrative finding must be upheld "unless any reasonable adjudicator would be compelled to conclude to the contrary." *El-Moussa*, 569 F.3d at 256 (quoting 8 U.S.C. § 1252(b)(4)(A), (B)). When the BIA adopts the IJ's reasoning and supplements with its own opinion, the court directly reviews the IJ's decision and considers the additional comments of the BIA. *Zhao*, 569 F.3d at 246. In this case, Toure challenges the IJ's credibility determination and factual findings on his persecution claim, so we review the decision under the deferential substantial evidence standard. *See Gilaj v. Gonzalez*, 408 F.3d 275, 283 (6th Cir. 2005) (per curiam) ("The court reviews the factual determination of whether a petitioner qualifies as refugee under a 'substantial evidence' test.").

**B.    Adverse Credibility Determination**

An IJ's adverse credibility determination must be based on inconsistencies that go to the "heart of the applicant's claim."[2] *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004). The determination cannot be based on irrelevant inconsistencies, but instead needs to be founded on inconsistencies that

---

[2]The standard for credibility determinations was amended by the REAL ID Act of 2005, which dictates that credibility determinations can be based on the totality of the circumstances. *El-Moussa*, 569 F.3d at 256. This new standard applies to applications filed after May 11, 2005. *Id.* Toure's application is dated January 28, 2004, so it does not fall under the REAL ID Act.

show an applicant's attempt "to enhance his claims of persecution." *Id.* The court should consider each of the grounds relied upon by the IJ to determine whether substantial evidence supports the adverse credibility determination or whether a reasonable adjudicator would be compelled to conclude otherwise. *Zhao*, 569 F.3d at 247–48. In this case, Toure argues that the IJ's credibility determination is based on inconsistencies that do not go to the heart of his claim and that the determination is not supported by substantial evidence.

This court has previously held that an inconsistency did not go the heart of a persecution claim where the inconsistency was over the amount that petitioner claimed he paid to become a member of a political party. *Sylla*, 388 F.3d at 926. In *Sylla*, the petitioner claimed that he was persecuted due to his membership in the Rally for Guinean People political party, and the court held that any inconsistencies in the amount he paid for his membership were "minor and irrelevant." Id. However, the inconsistencies did go to the heart of the petitioner's claims where the petitioner claimed that he would be persecuted if he returned to China after he had assaulted a state official who forced his wife to obtain an abortion. *Zhao*, 569 F.3d at 242, 249. The inconsistencies in *Zhao* included the date of the forced abortion, the number of times the petitioner hit the official, the person who told petitioner that state officials were looking for him, and the place that petitioner fled after he learned that authorities were looking for him. *Id.* at 248. The court determined that these facts went to the heart of the persecution claim. *Id.* Additionally, a fraudulent newspaper clipping, alleging that petitioner was an anti-communist activist and had received threats from Neo-Communists, went to the heart of the petitioner's claim that he suffered past persecution due to his political activities. *Selami v. Gonzales*, 423 F.3d 621, 625–26 (6th Cir. 2005).

This court has also held that an adverse credibility determination could be upheld even if some of the IJ's findings were not supported by substantial evidence. *Sarr v. Gonzales*, 485 F.3d 354, 360–61 (6th Cir. 2007). In *Sarr*, the IJ determined that the petitioner lacked credibility due to numerous inconsistencies in the record. *Id.* The *Sarr* court noted that the IJ misinterpreted or overemphasized the evidence on some of the inconsistencies. *Id.* at 361. Nevertheless, the court upheld the adverse credibility determination because the petitioner failed to introduce any documentation or evidence to corroborate his claims of past arrests, hospitalizations, or injuries. *Id.* In affirming the IJ's adverse credibility determination, the court noted the overall state of the record and the deference that must be afforded to the IJ's determination. *Id.*

In the case at bar, the IJ advanced two reasons to support the adverse credibility determination. First, the IJ noted the inconsistency in whether or not Toure actually signed the document stating that he was not tortured. Second, the IJ found that Toure's claim of beating was not consistent with the injuries he sustained and that Toure did not provide documentation to support his beating or injury claim. Toure claims error with these findings because the stated inconsistencies do not go to the heart of his claim and because they are against the substantial weight of evidence. As to the first inconsistency, whether Toure signed the document, this appears to be a "minor and irrelevant" inconsistency, which Toure is not using "to enhance his claims of persecution." *See Sylla*, 388 F.3d at 926. Thus, it does not go to the heart of his persecution claim.

Yet even if this inconsistency does not go to the heart of Toure's claim, the IJ also found Toure's claim of beating lacked credibility and was not substantiated by any evidence. This court has previously upheld an adverse credibility determination, even though part of the determination

was based on findings not substantiated by the record. *See Sarr*, 485 F.3d at 361 ("[O]ur review of the administrative record convinces us that some of these alleged inconsistencies involved a misinterpretation of the evidence . . . ."). Thus, in this case, the IJ's adverse credibility finding should still be upheld if the other stated reason is supported by substantial evidence. The IJ's determination—that Toure's claim of beating lacked credibility—is not *overwhelmingly* supported by the evidence, but neither does the evidence presented by Toure *compel* a conclusion to the contrary. *See El-Moussa*, 569 F.3d at 256 ("The adverse credibility determination . . . is conclusive unless any reasonable trier of fact would be compelled to conclude contrary." (internal quotations omitted)). Aside from vague assertions of beatings, in which he does not provide any detail regarding the beatings themselves or the resultant injuries, Toure has not produced any evidence to support his claim. Further, Toure's claim of beating goes to the heart of his application for asylum because it is being used to enhance his persecution claim. Under the deferential substantial evidence standard, we find no basis to overturn the IJ's adverse credibility determination.

## C. Persecution Determination

In his second claim of error, Toure argues that the IJ erred in finding that he failed to establish persecution. In order to obtain asylum, a petitioner "must show that he now possesses a well-founded fear of future persecution should he return to the country of his birth." *Kaba v. Mukasey*, 546 F.3d 741, 748 (6th Cir. 2008). Alternatively, eligibility for asylum can be met if the applicant shows that he suffered past persecution. *Gilaj*, 408 F.3d at 283. This Circuit defines persecution as "more than a few isolated incidents of verbal harassment or intimidation,

unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Id.* at 284 (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998)). While physical punishment might be a prerequisite, it alone is not always sufficient to find persecution. *Id*. "[E]ven a single beating offends one's sense of civilized governmental conduct, [but] a single beating does not *compel* a finding of persecution." *Id.* (internal quotations omitted). Further, "evidence of human rights conditions generally is not sufficient to establish persecution." *Thap v. Mukasey*, 544 F.3d 674, 681 (6th Cir. 2008) (citing *Daneshvar v. Aschcroft*, 355 F.3d 615, 624–25 (6th Cir. 2004)).[3]

This court has previously held that a petitioner's claims of harassment connected with his Muslim faith did not compel a conclusion that he possessed a well-found fear of future persecution. *Kaba*, 546 F.3d at 750. We have also upheld an IJ's finding that a petitioner failed to establish persecution where the petitioner was detained for several days, beaten and bruised, but lacked permanent injuries. *Gilaj*, 408 F.3d at 284 (citing *Gjokic v. Ashcroft*, 104 F. App'x 501, 503 (6th Cir. 2004)). Yet petitioners did carry their burden of showing persecution where they were targeted on numerous occasions due to their political opinions. *Id.* at 286. In *Gilaj*, the court reversed the IJ's decision that petitioners did not suffer persecution where petitioner's home had been subject to numerous searches, petitioners themselves were subject to numerous incidents of physical abuse, and petitioners received threatening phone calls. *Id.*

---

[3]The *Thap* court applied this standard to an application for withholding of removal. While the persecution showing is higher for withholding of removal, the court in *Thap* cited to asylum cases to support its definition of persecution. 544 F.3d at 681.

In the present case, the IJ found that Toure did not establish past persecution or a well-founded fear of future persecution. In finding that Toure's beating claims lacked credibility, the IJ determined that a three day detention, coupled with interrogations, did not amount to past persecution. Based on the above survey of case law, this finding comports with our definition of persecution. *See Gilaj*, 408 F.3d at 284 (noting that intimidation in the absence of physical harm or significant deprivation of liberty does not amount to persecution). Thus, substantial evidence exists to support the IJ's finding that Toure did not suffer past persecution.

Toure argues that even if he did not establish past persecution, he can still show a well-founded fear of future persecution under the Supreme Court's standard outlined in *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987). In that case, the Supreme Court held that a refugee does not have to prove a more-likely-than-not probability of persecution in order to satisfy the requirement of a well-founded fear of future persecution. *Id.* at 450. Even assuming that Toure correctly states his burden, he has not produced evidence which would compel a finding that he has a well-founded fear of future persecution. To support his claim, he cites the 2006 Country Report for the Ivory Coast and notes that persecution continues against the opposition party. Yet at his removal proceeding, Toure stated that he was not directly involved with any political party. Thus, any claim of persecution against opposition party members seems more like a general human rights condition and not something directly tied to Toure. *See Daneshvar*, 355 F.3d at 624 ("If we were to accept Petitioner's theory . . ., we would have to hold that every Iranian citizen has a well-founded fear of persecution *solely* by virtue of living in Iran). Further, the 2006 Country Report presents nothing more than human rights conditions in general, which the court in *Thap* noted was not sufficient to

establish persecution. 544 F.3d at 681. Based on the evidence presented by Toure, a reasonable

adjudicator would not be compelled to find that he has established a well-founded fear of future

persecution.

## III.

For the foregoing reasons, we **DENY** Toure's petition for review.