NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0589n.06

No. 09-3671

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Sep 02, 2010**

LEONARD GREEN, Clerk

| | |
|---|---|
| LING JUAN CHEN, | ) |
| | ) |
| Petitioner-Appellant, | ) |
| | ) |
| v. | ) ON PETITION FOR REVIEW FROM |
| | ) THE BOARD OF IMMIGRATION |
| ERIC H. HOLDER, Jr., United States | ) APPEALS |
| Attorney General, | ) |
| | ) |
| Respondent-Appellee. | ) |
| | ) |

Before: SILER and GIBBONS, Circuit Judges; REEVES, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Petitioner–appellant Ling Juan Chen petitions

for review of a decision of the Board of Immigration Appeals ("BIA") dismissing her appeal from

an Immigration Judge's ("IJ") decision denying her application for withholding of removal under

the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq*. ("INA"), and the Convention Against

Torture ("CAT"). Chen, a native and citizen of the People's Republic of China ("China"), applied

for withholding of removal based on alleged persecution by the Chinese government for membership

in an underground Christian church, illegally exiting China, and having two children in the United

States in alleged violation of Chinese family planning policies. Her application was denied by the

_____

[*]The Honorable Danny C. Reeves, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

1

IJ due to a lack of evidence of past or future persecution. The BIA affirmed the IJ's decision and dismissed her appeal.

For the following reasons, we dismiss the petition for review.

**I.**

In 1999, Chen fled her home of Guantou Town, located in Fuzhou City, Fuijian Province, due to her fear of persecution for her religious affiliation. Chen began attending church in China in 1993 and attended church up to four days a week. The Chinese government considered Chen's church, the Guantou Christa Delphians,[1] an "underground" church. On October 25, 1998, during a church meeting, officials from the public security bureau came to arrest members of the church. When the officials arrived, Chen heard a commotion from the back of the church where she was washing tables. A church member shouted for her to "run," and Chen fled the church through the back door and ran to the nearby mountains.

Chen hid in the mountains until nightfall, then walked to a relative's house. There, she telephoned her parents, who advised her to stay with her relative and not return home because the public security officials were arresting people from her church. Two days later, Chen's father called to inform her that the public security bureau had come to their house and served a notice requiring her to appear for a hearing at the bureau in seven days. Chen had heard from other church members that people who appeared for hearings at the bureau received beatings and experienced other forms of violence, and so she did not appear for her hearing. Chen stayed in hiding, moving from one

---

[1]Chen's church is referred to, variously, throughout the record as the "Guantou Christian Church," "Christian Place," and the "Guantou Christian meeting place."

relative's house to another, and went eventually to her cousin's home in Chong Qing City, Szechuan Province, approximately ten to twenty hours away from Guantou Town, where she stayed for six or seven months. While at her cousin's house, she heard that her relatives in Guantou Town were being questioned by officials and that the officials were looking for her. She did not often leave her cousin's home and was not harmed by the government while there.

In 1999, Chen came to the United States with the help of a "snake head," a common Chinese term for smuggler, for the price of $50,000. Chen flew from China to Hong Kong using a Chinese passport.[2] However, in Hong Kong, the smuggler took the passport and gave her a fake passport in English that contained her picture. She entered the United States on June 15, 1999, but did not seek asylum because she did not know that it was available and because she was working to pay off the remaining amount owed for the smuggler's services.[3] Since her arrival, Chen has married and has had two children, both born in the United States.

Chen's family remains in China, where her parents belong to an officially recognized, registered church and her brother attends underground churches. Her brother moves around China because he fears being caught by the government. Public security officials came to Chen's parents' house a "few times" a year to look for her after the incident on October 25, 1998, and continued to

---

[2]There is some inconsistency between Chen's testimony at her hearing and the IJ's decision on this point. The IJ found that Chen "left China utilizing a fake passport that contained her picture." However, Chen testified that when "[f]lying out from China [she] had [to] travel with a Chinese passport." When asked if it was her passport, Chen replied in the affirmative.

[3]Chen, through counsel, conceded that she is statutorily ineligible for the relief of asylum because she did not file before the one-year bar. *See* 8 U.S.C. § 1158(a)(2)(B).

come after her departure from China. The officials broke dishes and pushed over furniture while at the house.

The Department of Homeland Security initiated removal proceedings against Chen on August 24, 2008. Chen applied for withholding of removal under the INA and withholding pursuant to Article 3 of the CAT. At her hearing before the IJ on January 29, 2009, she testified that she believes that if she is returned to China, the public security bureau would imprison her for three reasons: (1) she attended an underground Christian church in China; (2) she was smuggled illegally out of China; and (3) she has had two children in the United States, in violation of Chinese family planning policies. Chen further testified that she could not relocate in China because, in order to resume her previous career as a nurse, she would have to register herself, and this registration would alert the police that she was back in China. While the IJ found Chen credible, she nevertheless denied Chen's application and ordered her removed to China, finding that Chen failed to demonstrate her eligibility for withholding of removal under both the INA and the CAT.

First, the IJ found that there was no evidence of past persecution relating to Chen's religious practices because Chen did not testify that she was arrested, detained, or beaten while in China. The IJ further found that the notice to appear before the public safety bureau did not rise to the level of persecution. The IJ also found that the fact that Chen was able to stay with a relative for six or seven months without incident, coupled with the fact that Chen's brother frequently relocates, demonstrated that Chen's relocation within China would be possible, should she return.

The IJ also addressed Chen's fear of returning to China because she was smuggled out of the country illegally and found that there was no documentary evidence that Chen would be targeted

because she was purportedly smuggled out of China. The IJ found that this claim was undercut by the ease with which Chen obtained a passport and further noted that Chen obtained a passport and passport extension from the Chinese Consulate in Chicago without problems. Furthermore, the IJ found that Chen's fear of returning to China because she was smuggled out of the country did not contain the requisite nexus to a protected ground for purposes of establishing persecution.

Finally, the IJ found that Chen's fear that she would be subject to Chinese family planning policies, specifically, sterilization, should she return was insufficient to establish Chen's eligibility for withholding of removal under the INA. The IJ noted that Department of State Reports contained in the record indicated that forced sterilization was formally prohibited in China. Further, the IJ noted that, should Chen take her children back to China with her, they would not count for family planning purposes, as long as they were not registered as permanent residents of China. Finally, the IJ found that there was no evidence that Chen intended to have more children and then would have to face the dilemma of whether to register her U.S.-born children and have them counted for family planning purposes.

Chen filed an appeal from the IJ's decision with the BIA, which the Board dismissed. The BIA agreed with the IJ's conclusion that Chen failed to meet her burden of establishing that she suffered past persecution or that she faces a "clear probability" of persecution on account of any protected ground if returned to China. The BIA found that the IJ properly determined that the incident on October 25, 1998, did not rise to the level of persecution because Chen was never arrested, detained, or physically harmed because of her membership in an underground church. The BIA noted that, under *Mikhailevitch v. INS*, 146 F.3d 384 (6th Cir. 1998), persecution under the INA

requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty. The BIA also found that Chen had not established that it is more likely than not that she would suffer persecution if removed to China. Next, the BIA found that Chen had not established eligibility for relief from removal due to her alleged violation of the Chinese exit laws, noting that Chen had submitted insufficient documentary evidence to support her claim that she would suffer persecution by the Chinese government for illegally emigrating to the United States. Finally, the BIA found that Chen had submitted insufficient evidence to demonstrate an objective fear that she would be sterilized or suffer other harm rising to the level of persecution upon her return to China due to having had two children in the United States.

## II.

"Where the Board affirms the IJ's ruling but adds its own comments, [this court] reviews both the IJ's decision and the Board's additional remarks." *Karimijanaki v. Holder*, 579 F.3d 710, 714 (6th Cir. 2009) (citing *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005)). We review the agency's factual findings under the substantial evidence standard. *Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007). "These findings 'are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). Accordingly, "under this deferential standard, [the court] may not reverse the Board's determination simply because [it] would have decided the matter differently." *Karimijanaki*, 579 F.3d at 714 (quoting *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001)). Rather, "reversal is merited only if the evidence not only supports a contrary conclusion, but indeed compels it." *Lin v. Holder*, 565 F.3d 971, 976

(6th Cir. 2009) (citation, quotation marks, and alteration omitted). Legal questions are reviewed *de novo*, but we defer to the BIA's reasonable interpretations of the INA and its accompanying regulations. *Karimijanaki*, 579 F.3d at 714; *Lin*, 565 F.3d at 976.

**A.**

To qualify for withholding of removal, "an alien must show that there is a 'clear probability,' that is, that 'it is more likely than not,' that she would be subject to persecution on the basis of" her race, religion, nationality, membership in a particular social group, or political opinion. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006) (quoting *Liti v. Gonzales*, 411 F.3d 631, 640–41 (6th Cir. 2005)); *see* 8 U.S.C. § 1231(b)(3)(A). "Persecution is 'a threat to the life or freedom of, or the infliction of suffering or harm upon, those who differ in a way regarded as offensive.'" *Thap v. Mukasey*, 544 F.3d 674, 681 (6th Cir. 2008) (quoting *Matter of Acosta*, 19 I. & N. Dec. 211, 222–23 (BIA 1985)).

"An applicant must therefore actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an objective situation under which his fear can be deemed reasonable." *Mikhailevitch*, 146 F.3d at 389 (citations and quotation marks omitted). "More specifically, we have held that persecution consists of 'more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty.'" *Thap*, 544 F.3d at 681 (quoting *Mikhailevitch*, 146 F.3d at 390).

> The alien can meet his burden by showing either: (1) past persecution on account of
> a protected ground, in which case there is a rebuttable presumption that the alien's

> life or freedom would be threatened if he returned to his native country; or (2) a
> future threat to his life or freedom on account of a protected ground.

*Id.* (citing 8 C.F.R. § 208.16(b)(1) and (2), and *Almuhtaseb*, 453 F.3d at 750).

The IJ and the BIA concluded that Chen failed to establish past persecution because she did not testify or present any evidence that she was personally arrested, detained, or physically harmed because of her membership in an underground church. This finding is supported by substantial evidence, as Chen testified only as to one incident in which she fled her church. According to Chen, she was able to flee without incident and suffered no physical harm. Likewise, she was able to evade a notice to meet with members of the public security bureau. Subsequent visits by government officials to Chen's family home did not result in arrest, detention, or violence. Such evidence of harassment, without physical punishment, infliction of harm, or a significant deprivation of liberties does not compel a conclusion of past persecution. *See Mikhailevitch*, 146 F.3d at 390. Chen contends that her testimony concerning reports that other members of her church were arrested and beaten by members of the police establishes past persecution. The alleged persecution of other members of her church, however, is insufficient to compel a conclusion that Chen herself suffered past persecution. *See Aktar v. Gonzales*, 406 F.3d 399, 406 (6th Cir. 2005) (concluding that alien could not rely on persecution of others to meet burden of proof that he suffered past persecution) (citing *Ciorba v. Ashcroft*, 323 F.3d 539, 545 (7th Cir. 2003)).

The IJ and the BIA also concluded that Chen failed to demonstrate a clear probability of future persecution should she be removed to China based upon her prior membership in an underground church, the birth of two children in the United States, or her illegal departure from China. On Chen's claim related to her religious affiliation, the IJ determined that, in light of the fact

8

that Chen did not suffer past persecution in China and because she was able move to another region of the country prior to departing China and live without incident, she did not demonstrate that it is more likely than not that she will be persecuted on account of her religion. The IJ further noted Chen's testimony regarding her brother's ability to move about the country without harassment while working and attending underground churches, and concluded that this also demonstrated Chen's ability to relocate herself to a region in China where she will not face government harassment. Given the record evidence on these points, we cannot conclude that the evidence compels a different result than that reached by the BIA. Importantly, Chen did not demonstrate, nor does she argue on appeal, that she would be unable to relocate in China to avoid the mistreatment she contends she would face if she returns to her home town. *See Fisenko v. Holder*, 336 F. App'x 504, 516 (6th Cir. 2009) (noting that an alien "will not be considered to have a well-founded fear of persecution if he could avoid persecution by relocating to another part of [his home country] if under all the circumstances it would be reasonable to expect him to do so" (citing 8 C.F.R. § 208.13(b)(2)(ii))). The conclusions of the IJ and BIA that Chen has not demonstrated a clear probability of future persecution on account of her religion are therefore supported by substantial evidence.

Chen also claims that she will face persecution upon removal for violating China's family planning laws. Chen argues that, because she had two children while living in the United States, she will face sterilization and other forms of persecution upon her return to China. The IJ and the BIA, however, determined that Chen had put forth insufficient evidence to demonstrate that it is more likely than not that she would be sterilized or otherwise persecuted for having children in the United States in light of official reports indicating that foreign born children are not counted for purposes

9

of China's family planning laws. We have similarly recognized that China does not currently have a national policy of requiring sterilization of parents who return with children born outside of China. *See Huang v. Mukasey*, 523 F.3d 640, 653 (6th Cir. 2008). Chen's testimony that she has heard of people who were sterilized under circumstances similar to her own, without corroborating evidence, does not compel a contrary conclusion. The BIA's conclusion is therefore supported by substantial evidence.

Finally, Chen does not appear to appeal the BIA's determination that she did not demonstrate a clear probability of persecution on account of her departing China illegally. Because Chen did not brief the issue on appeal, it has been waived. *See United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006) ("[A]n appellant abandons all issues not raised and argued in its initial brief on appeal. . . . [I]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (citations and internal quotation marks omitted)).

## B.

"[T]o be eligible for withholding of removal under the CAT, 'the applicant bears the burden of establishing it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Almuhtaseb*, 453 F.3d at 749 (quoting *Liti*, 411 F.3d at 641). An alien "need not show that the harm she faces is based on one of the five grounds (race, religion, nationality, social group, political opinion) required under the INA, but rather must establish a 'particularized threat of torture.'" *Id.* at 751 (quoting *Castellano-Chacon v. INS*, 341 F.3d 533, 551 (6th Cir. 2003)). "The term 'torture' only describes 'an extreme form of cruel and inhuman treatment and does not

include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture.'" *Id.* (quoting 8 C.F.R. § 1208.18(a)(2)); *see also* 8 C.F.R. § 1208.18(a)(1).

All evidence should be assessed in considering whether it is more likely than not that an alien would be subject to torture upon removal,

> including but not limited to: (i) Evidence of past torture inflicted upon the applicant; (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured; (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and (vi) Other relevant information regarding conditions in the country of removal.

*Id.* (quoting 8 C.F.R. § 208.16(c)(3)).

Chen contends that she will be tortured in China because other members of her church have been tortured while in police custody. The IJ, however, concluded that "the record is absolutely devoid of any information from which this Court could discern that it is more likely than not that [Chen] would be targeted for torture." The IJ noted that Chen was able to relocate in China following the incident at her local church, and was able to live there without problems for six months before she left China. The evidence of Chen's ability to relocate in China to avoid harassment and potential persecution, coupled with the fact that she has not herself previously experienced persecution, severely undercut her contention that she will be tortured upon return to China. The IJ's and BIA's determinations on this issue were therefore supported by substantial evidence.

## III.

For the foregoing reasons, we affirm the BIA's decision.